**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DAVID WADKINS,
Plaintiff-Appellee,

v.

ROBERT ARNOLD,

Defendant-Appellant,

No. 99-1370

and

THE FIRST BANK & TRUST COMPANY,
Defendant.

Appeal from the United States District Court
for the Western District of Virginia, at Abingdon.
Glen M. Williams, Senior District Judge.
(CA-97-151-A)

Argued: January 24, 2000

Decided: June 2, 2000

Before WIDENER, WILLIAMS, and KING, Circuit Judges.

_____

Reversed and remanded by published opinion. Judge King wrote the
opinion, in which Judge Widener and Judge Williams joined.

_____

**COUNSEL**

**ARGUED:** Steven Ray Minor, ELLIOTT, LAWSON & POM-
RENKE, Bristol, Virginia, for Appellant. Mark Tucker Hurt, Abing-
don, Virginia, for Appellee.

_____

**OPINION**

KING, Circuit Judge:

David Wadkins brought this case in the Western District of Virginia against Detective Robert Arnold of the Washington County, Virginia, Sheriff's Office, alleging he was improperly arrested under warrants obtained by Detective Arnold. Mr. Wadkins asserts that Detective Arnold's actions violate his Fourth Amendment rights and also give rise to state-law claims for malicious prosecution and defamation. Detective Arnold moved for summary judgment, asserting qualified immunity. The district court denied his motion, and Detective Arnold appeals.[1] For the reasons set forth below, we reverse and remand for entry of judgment in favor of Detective Arnold.

I.

Sometime in April 1996, Mr. Wadkins's wife, Lisa, entered the First Bank and Trust Company (the "Bank") in Abingdon, Virginia. She opened a joint checking account (in her and Mr. Wadkins's name) and deposited therein a check in the sum of $1,553.80, made out to Mr. Wadkins and Americredit, a finance company, as joint payees. The maker of the check was AIC, an insurance company, and the check was apparently intended to cover damage to an automobile financed through Americredit. There were two signature blocks on the check for the endorsements of each of the two payees. Confusingly, when the check was presented to the Bank on behalf of Mr. and Mrs. Wadkins, Mr. Wadkins's signature appeared in both signature blocks. However, Mrs. Wadkins convinced Carol Robinson, the teller, either that: (1) Mr. Wadkins's second signature functioned as the endorsement of Americredit; or (2) Americredit's endorsement was not required. In any event, Ms. Robinson allowed Mrs. Wadkins to deposit the check and to open the joint checking account.

After the account was opened, Ms. Robinson informed Mrs. Wadkins that a seven-day hold would be placed on the funds represented

_____

[1] We possess jurisdiction to hear Detective Arnold's appeal under the collateral order doctrine. See Mitchell v. Forsyth, 472 U.S. 511, 530 (1985).

2

by the AIC check until the check cleared. Nevertheless, Mrs. Wadkins began writing checks from the new account almost immediately. Between April 15 and July 15, 1996, the Bank was presented with approximately forty-nine checks on this account. Meanwhile, AIC had notified the Bank that it would not pay the AIC check because it was improperly endorsed. The Bank promptly informed Mr. and Mrs. Wadkins, by letter of April 29, 1996, that the AIC check had been returned. Additionally, on May 29, 1996, the Bank notified Mr. and Mrs. Wadkins that Americredit had refused to endorse the AIC check because Mr. Wadkins was delinquent in his automobile payments. Despite being notified that the initial deposit of the AIC check into their account was not honored, and notwithstanding that no additional funds were ever deposited in the joint checking account, Mrs. Wadkins continued writing checks on the joint account, all of which were drawn on insufficient funds.

A second incident occurred several months later, in September 1996. Mrs. Wadkins cashed several checks at the Bank drawn on a NationsBank account in the name of David Shiwpal. These checks were later returned due to insufficient funds in Mr. Shiwpal's account. When Roberta Looney, the Branch Manager of the Bank in Abingdon, investigated the matter, she observed that some of the Shiwpal checks had different social security numbers and addresses, and that one Shiwpal check listed an address on the same street as the Wadkins's residence. Significantly, after comparing the signature "David Shiwpal" on one of the NationsBank checks with the signature reading "David Wadkins" on the AIC check, Ms. Looney concluded that both signatures had been written by the same person. Ms. Looney therefore suspected Mr. Wadkins of forging Shiwpal's signature on the NationsBank checks cashed by Mrs. Wadkins. Believing that Mr. and Mrs. Wadkins might be involved in a check fraud scheme, Ms. Looney contacted Detective Arnold, a veteran of twenty years with the Sheriff's Office. Detective Arnold had previously investigated several bad check cases involving the Bank. After conferring with Ms. Looney and examining the documentary evidence provided to him, Detective Arnold decided to institute a formal investigation.

Following further inquiry, Detective Arnold appeared before a Washington County Magistrate, Edward L. VanHoy, seeking a warrant charging Mr. Wadkins with forgery. Rather than issue the war-

rant, however, the Magistrate requested that Detective Arnold consult with the Commonwealth's Attorney for Washington County, Dennis Godfrey. Detective Arnold promptly did so, and at the culmination of his meeting with Mr. Godfrey, the prosecutor authorized him to initiate two criminal charges against Wadkins. Detective Arnold then returned to Magistrate VanHoy seeking warrants against Wadkins for: (1) obtaining money by false pretenses, in violation of Va. Code Ann. § 18.2-178; and (2) forgery, in violation of Va. Code Ann. § 18.2-172. These warrants were issued by the Magistrate on October 1, 1996.

After learning of the outstanding warrants, Wadkins voluntarily surrendered at the Washington County Sheriff's Office, and he was released on bond by the Magistrate. However, the Commonwealth's Attorney later decided not to prosecute Wadkins on either of the charges. The prosecutor's nolle prosequi decision was based largely on an affidavit of Mr. Shiwpal, submitted to Godfrey on behalf of Wadkins, in which Shiwpal indicated that: (1) he had in fact written checks payable to Lisa Wadkins; and (2) neither David nor Lisa Wadkins had "ever forged checks on my account and I have not requested anyone to file charges pertaining to the same." J.A. 311.**2**

On September 12, 1997, Mr. Wadkins filed this action against the Bank and Detective Arnold, pursuant to 42 U.S.C.§ 1983 and Virginia state law. Detective Arnold moved for summary judgment, contending that he was entitled to qualified immunity. **3** The district court denied Detective Arnold's motion, and he now appeals.

_____

**2** Although the Shiwpal affidavit did not address the false pretenses charge (that Wadkins had attempted to obtain money by signing the signature of Americredit on the AIC check), that charge was also dropped. This aspect of the nolle prosequi decision was apparently attributable to the lack of evidence that the AIC check carried a signature purporting to be that of Americredit.

We note that a nolle prosequi, if entered before jeopardy attaches, is without prejudice to further prosecution. Cummings v. Commonwealth, 481 S.E.2d 493, 494 (Va. Ct. App. 1997) (citation omitted).

**3** The Bank also moved for summary judgment, arguing that it was immune from liability because it was not a state actor for purposes of 42 U.S.C. § 1983. The district court agreed and granted summary judgment to the Bank by order of February 19, 1999. This order has not been appealed.

4

II.

We review de novo the district court's denial of Detective Arnold's motion for summary judgment based on qualified immunity. See Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir. 1992). As in any context, summary judgment is appropriate only if (1) there are no genuine issues of material fact;**4** and (2) based on the undisputed facts, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

III.

Detective Arnold argues that the district court erred in denying his motion for summary judgment, asserting that he is entitled to qualified immunity on two grounds. First, he contends that there is no clearly established constitutional right to be free from arrest absent probable cause; thus, Mr. Wadkins failed to allege a deprivation of a constitutional right. Second, even if the arrest of Wadkins violated a clearly established constitutional right, Detective Arnold maintains that he is nevertheless entitled to qualified immunity because he acted reasonably; that is, a reasonable person in his position would not have known that his actions were unlawful. Because Detective Arnold's first argument fails on the reasoning of the district court, Wadkins v. Arnold, No. 97-0151-A, mem. op. at 12-13 (W.D. Va. Feb. 19, 1999),

_____

**4** Pursuant to the Supreme Court's decision in Johnson v. Jones, 515 U.S. 304 (1995), we lack jurisdiction to review the district court's order denying qualified immunity "insofar as that order determines whether or not the pretrial record sets forth a `genuine' issue of fact for trial." Id. at 320. However, there is no material dispute in this case regarding the manner of Detective Arnold's investigation and the information obtained and procedures followed prior to seeking the warrants. Accordingly, whether Detective Arnold is entitled to qualified immunity in this case is solely a question of law. See Gould v. Davis , 165 F.3d 265, 269 (4th Cir. 1998) (although "different facts in evidence could be used to support different conclusions as to whether the officers deserve qualified immunity, this does not indicate a factual dispute, but rather, a question of law.").

we focus our inquiry on Arnold's second argument-- that he is enti-
tled to qualified immunity based on the reasonableness of his actions.**5**

A.

1.

Wadkins asserts that no reasonable officer in Detective Arnold's
position could have concluded that he possessed enough information
to establish probable cause for seeking an arrest warrant. In assessing
the objective reasonableness of Detective Arnold's actions, the
absence of probable cause is not determinative. Rather, where a law
enforcement officer acts pursuant to a warrant, the critical question is
whether the officer could have reasonably thought there was probable
cause to seek the warrant. As the Supreme Court recognized in Malley
v. Briggs, 475 U.S. 335 (1986), "Only where the warrant application
is so lacking in indicia of probable cause as to render official belief
in its existence unreasonable will the shield of immunity be lost." Id.
at 344-45 (citation omitted). In explaining why the absence of proba-
ble cause is not determinative, the Supreme Court has observed:

> [I]t is inevitable that law enforcement officials will in some
> cases reasonably but mistakenly conclude that probable

_____

**5** Although not at issue, we note that neither the Magistrate nor the
Commonwealth's Attorney were sued, and neither of them should prop-
erly be susceptible to suit. As a judicial officer performing an act within
his judicial capacity -- directing the issuance of warrants against Wad-
kins -- the Magistrate was absolutely immune from suit. See Pressly v.
Gregory, 831 F.2d 514, 517 (4th Cir. 1987). Likewise, the prosecutor's
decision to authorize the prosecution of Wadkins should be protected by
absolute immunity. See Buckley v. Fitzsimmons , 509 U.S. 259, 273
(1993) ("[A]cts undertaken by a prosecutor in preparing for the initiation
of judicial proceedings or for trial, and which occur in the course of his
role as an advocate for the State, are entitled to the protections of abso-
lute immunity."). Although the district court indicated that, in its view,
the Commonwealth's Attorney might not be entitled to absolute immu-
nity under these facts, we would be constrained to disagree. In Spring-
men v. Williams, 122 F.3d 211, 212-13 (4th Cir. 1997), we held that the
doctrine of absolute immunity "squarely covers a prosecutor's decision
to go forward with a prosecution."

cause is present, and we have indicated that in such cases those officials -- like other officials who act in ways they reasonably believe to be lawful -- should not be held personally liable.

Anderson v. Creighton, 483 U.S. 635, 641 (1987) (citing Malley, 475 U.S. at 344-45). Therefore, Detective Arnold may be entitled to qualified immunity even if the warrants at issue are later determined to have been lacking in probable cause. Nevertheless, the legal principles relating to the probable cause standard provide a convenient starting point for our analysis of the reasonableness of Detective Arnold's actions.

2.

Probable cause exists when the facts and circumstances within an officer's knowledge -- or of which he possesses reasonably trustworthy information -- are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed. Brinegar v. United States, 338 U.S. 160, 175-76 (1949) (citation omitted). In assessing whether probable cause exists, we must examine the totality of the circumstances. Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996) (citing United States v. Al-Talib, 55 F.3d 923, 931 (4th Cir. 1995)). Determining whether the information surrounding an arrest suffices to establish probable cause is an individualized and fact-specific inquiry. Wong Sun v. United States , 371 U.S. 471, 479 (1963). Accordingly, we direct our attention to the circumstances surrounding Detective Arnold's efforts to obtain the arrest warrants in this case.

In Virginia, a person is guilty of obtaining money by false pretenses if he "obtain[s], by any false pretense or token, from any person, with intent to defraud, money or other property. . . or if he obtain[s], by any false pretense or token, with such intent, the signature of any person to a writing, the false making whereof would be forgery . . . ." Va. Code Ann. § 18.2-178 (Michie 1999). Prior to seeking the false pretenses warrant, Detective Arnold had compiled at least the following information: (1) AIC had issued a check to Mr. Wadkins and Americredit as joint payees; (2) in an attempt to deposit the AIC check and open a joint checking account on behalf of Mr.

7

Wadkins and herself, Mrs. Wadkins pointed out two signatures to the bank teller, both of which she claimed were her husband's; (3) one of Mr. Wadkins's signatures on the AIC check was in the signature block reserved for the endorsement of Americredit; (4) Americredit never endorsed the check; (5) AIC notified the Bank that it would not pay the check because it was improperly endorsed; (6) the Bank notified Mr. and Mrs. Wadkins that the AIC check had been returned and that Americredit did not intend to endorse it; and (7) because the initial deposit was not honored and no additional funds were ever deposited in the Wadkins' newly opened checking account, over forty insufficient checks were written by Mrs. Wadkins on the joint account.

With respect to the forgery charge, a person is guilty of forgery in Virginia if he "forge[s] any writing . . . to the prejudice of another's right, or utter[s], or attempt[s] to employ as true, such forged writing, knowing it to be forged . . . ." Va. Code Ann.§ 18.2-172 (Michie 1999). At the time he sought the forgery warrant, Detective Arnold possessed at least the following information regarding the alleged forgery: (1) the branch manager of the Bank, Mrs. Looney, had compared the two signatures and concluded that they were similar; (2) Detective Arnold made the same comparison and reached the same conclusion;[6] (3) various Shiwpal checks listed different social security numbers and mailing addresses; and (4) the circumstances of the joint checking account and the fact that over forty bad checks had been written in connection with that account.

Based on the totality of these facts, Detective Arnold approached

_____

[6] The district court was concerned that neither Ms. Looney nor Detective Arnold were trained in handwriting comparison. J.A. 701-02. However, given Ms. Looney's experience in the banking industry and Detective Arnold's experience investigating "bad check" cases, both Looney and Arnold appear qualified to testify as to their conclusions. See Wileman v. Commonwealth, 484 S.E.2d 621, 624 (Va. Ct. App. 1997) (bank vice president with twenty-four years of banking experience, whose duties involved verification of customer signatures, was qualified to give expert opinion testimony comparing signatures). Moreover, as the district court acknowledged, even the non-expert comparison of handwritten signatures could be a valid factor in assessing probable cause.

the Magistrate seeking a warrant to arrest Wadkins-- initially only on a forgery charge. Instead of issuing the warrant, however, the Magistrate requested Detective Arnold to consult with the Commonwealth's Attorney "to see if there could be another charge . . . ." J.A. 246. In turn, the Commonwealth's Attorney, Mr. Godfrey, authorized two criminal charges against Wadkins: (1) obtaining money by false pretenses; and (2) forgery. Detective Arnold then returned to the Magistrate, who promptly issued the two warrants against Wadkins.

B.

1.

In denying Detective Arnold's motion for summary judgment, the district court declined to conclude that Arnold reasonably believed that probable cause existed to arrest Wadkins on either charge. In reaching this determination with respect to the false pretenses charge, the district court correctly noted that "One who signs a check in the wrong place has not committed the offense of obtaining money by false pretenses, unless it was done with criminal intent." J.A. 708 (citing Va. Code Ann. § 18.2-178). Nevertheless, the district court found that no reasonable officer could have inferred such intent on the part of Wadkins, stating, "It is difficult to imagine that an individual bent on fraud would attempt to provide the signatures of two different people by signing his own name twice." J.A. 708.

We disagree. As the district court recognized, "[S]urrounding circumstances, even circumstances that appear innocent when considered alone, may provide a basis for finding probable cause." J.A. 703 (citing Porterfield v. Lott, 156 F.3d 563, 570 (4th Cir. 1998)). The district court acknowledged that the circumstances surrounding the deposit of the AIC check, including the behavior of Mrs. Wadkins, could properly be taken into account at the probable cause stage of a criminal prosecution. Suspecting the existence of an illegal check scheme, Detective Arnold therefore properly considered facts in addition to the appearance of Wadkins's signature in two places on the AIC check. In particular, both the misrepresentation to the Bank that the AIC check was properly endorsed, and the substantial number of bad checks written on the Wadkins's joint account, informed Detective Arnold's probable cause assessment. In light of all these facts, we

9

conclude that Arnold could have reasonably inferred Wadkins's intent to defraud.

With respect to the forgery charge, the district court seized upon Detective Arnold's failure to contact Shiwpal during the course of his investigation: "[A] reasonable officer should at least have contacted Shiwpal and asked him if the disputed signature was his." J.A. 702. Shiwpal ultimately averred that Wadkins had not forged his signature; presumably, Shiwpal would have informed Detective Arnold of the same had he been asked earlier. Finding Shiwpal's statement to be a "key piece of evidence," the district court concluded that "a reasonable officer should have obtained it before seeking the warrants." J.A. 702. The district court's conclusion was based largely on our decision in Clipper v. Takoma Park, 876 F.2d 17 (4th Cir. 1989), where we held that a law enforcement officer's failure to pursue an easily obtainable piece of information that could completely exculpate a suspect weighed heavily against a finding that the officer's conduct was reasonable. Id. at 20. See also Sevigny v. Dicksey, 846 F.2d 953, 957-58 (4th Cir. 1988) (holding officer who neglected to"avail himself of readily available information" which would have exculpated the plaintiff was not entitled to qualified immunity for unlawful arrest).

Here, however, Detective Arnold did not "fail to pursue" readily available information. Indeed, Detective Arnold attempted on several occasions, without success, to contact Shiwpal, both in person and via telephone. Even if he had not tried to contact Shiwpal, however, the failure to pursue a potentially exculpatory lead-- standing alone -- is not determinative. Clipper, 876 F.2d at 20. Although an officer may not disregard readily available exculpatory evidence of which he is aware, the failure to pursue a potentially exculpatory lead is not sufficient to negate probable cause. Smith v. Reddy , 101 F.3d 351, 357 (4th Cir. 1996) (citing Torchinsky v. Siwinski , 942 F.2d 257, 264 (4th Cir. 1991)).[7] Reasonable law enforcement officers are not required to

_____

[7] In our Torchinsky decision, we explained the rationale behind this approach:

> It will, of course, always be possible to contend in court that an arresting officer might have gathered more evidence, but judges cannot pursue all the steps a police officer might have taken that might have shaken his belief in the existence of probable cause.

942 F.2d at 264.

10

"exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established." Torchinsky, 942 F.2d at 264 (citing Krause v. Bennett, 887 F.2d 362, 371 (2d Cir. 1989) ("[P]robable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful.")). Accordingly, Detective Arnold's failure to speak with Shiwpal prior to seeking the arrest warrants does not per se render his actions unreasonable.

2.

Conversely, Detective Arnold's conference with the Commonwealth's Attorney and the subsequent issuance of the warrants by a neutral and detached magistrate weigh heavily toward a finding that Detective Arnold is immune. At the specific request of the Magistrate, Detective Arnold conferred with the Commonwealth's Attorney, who in turn explicitly authorized both of the charges in question. The district court, concerned by the absence of evidence in the record detailing precisely what information Detective Arnold provided to the prosecutor during this conference, concluded that it could not decide, as a matter of law, whether Mr. Godfrey's advice rendered Detective Arnold's actions objectively reasonable: "Arnold may have offered so little information to the prosecutor that he cannot be said to have acted reasonably even if he acted on the prosecutor's advice. These facts must be determined by the jury." J.A. 706.

Admittedly, beyond Detective Arnold's statement that he showed Godfrey the checks in question, the record does not fully reveal the extent of the evidence Arnold presented to the Commonwealth's Attorney. However, Wadkins does not allege that Detective Arnold acted in bad faith or that he provided misleading information to the Commonwealth's Attorney. Accordingly, any dispute as to what was done during this meeting is immaterial -- what is material is that, at the meeting's conclusion, Godfrey authorized the charges against Wadkins. Indeed, the district court admitted that "[c]ommon sense tells us that Detective Arnold did some explaining-- he did not simply enter the prosecutor's office and mutely display various checks to him." J.A. 706. We agree with these common sense instincts, and we believe the district court placed too much emphasis on the absence of the specific contents of Detective Arnold's conference with the prose-

11

cutor. The most compelling aspect of this conference is clear: at its conclusion, the Commonwealth's Attorney, on behalf of the Commonwealth of Virginia, authorized warrants for the arrest of Wadkins.**8**

Of course, the mere fact that Detective Arnold acted upon the Commonwealth's Attorney's authorization in applying for the warrants does not automatically cloak Arnold with the shield of qualified immunity. However, this authorization -- by the elected chief law enforcement officer of Washington County -- is compelling evidence and should appropriately be taken into account in assessing the reasonableness of Arnold's actions. See Pritchett , 973 F.2d at 316 ("[T]he most obvious possibility [of exceptional circumstances supporting qualified immunity despite the violation of a clearly established constitutional right] is mistaken official advice by legal counsel."); accord Buonocore v. Harris, 134 F.3d 245, 253 (4th Cir. 1998) (although reliance on advice of counsel alone does not constitute "extraordinary circumstance," reliance on the advice of counsel is a factor to be considered).

In our analysis of this aspect of the case, we find instructive the Ninth Circuit's decision in Arnsberg v. United States, 757 F.2d 971 (9th Cir. 1985). In Arnsberg, two Internal Revenue Service agents were sued after executing an arrest warrant for a material witness. Prior to seeking the warrant, the agents consulted with an Assistant United States Attorney. After describing the difficulties they had encountered in attempting to serve the witness personally, the prose-

_____

**8** As Detective Arnold's uncontradicted deposition makes clear, it was the Commonwealth's Attorney who authorized prosecution against David Wadkins:

> Q: Then who exactly selected the charges that were brought against David Wadkins?
>
> A: The Commonwealth's Attorney.
>
> . . . .
>
> Q: And who was it that decided to charge David Wadkins . . . in this case?
>
> A: The Commonwealth's Attorney.

J.A. 285.

12

cutor concluded that the facts justified the issuance of a material witness warrant, pursuant to 18 U.S.C. § 3149 (1982) (current version at 18 U.S.C. § 3144), which authorizes the arrest of material witnesses whose presence cannot practically be secured by subpoena. A Magistrate Judge then issued a warrant, which the two agents executed later the same day. The district court subsequently found the warrant invalid because, in its view, "the difficulties encountered by agents Weiler and Maney in attempting to serve Arnsberg did not establish probable cause for believing that it would be impracticable to secure Arnsberg's presence by subpoena." 757 F.2d at 976.

Although the Ninth Circuit agreed with the district court's probable cause assessment, it concluded that the agents were nevertheless entitled to qualified immunity: "Counsel's advice would prevent a reasonable person from knowing that Arnsberg's constitutional rights were being violated." Id. at 982. The Ninth Circuit explained:

> Reasonable attorneys could disagree with our probable cause assessment. It would be plainly unreasonable to rule that the arresting officers . . . must take issue with the considered judgment of an assistant United States Attorney and the federal magistrate. Not only would such a rule cause an undesirable delay in the execution of warrants, but it would also mean that lay officers must at their own risk second-guess the legal assessments of trained lawyers.

Id. at 981 (emphasis added). The rationale embodied in the Arnsberg decision clearly applies in this case.

Furthermore, it is important that the Washington County Magistrate agreed with both Detective Arnold's and the prosecutor's assessment of probable cause, and the magistrate determined to issue the warrants. Admittedly, if a reasonable officer in Detective Arnold's position should not have applied for the warrants, then Arnold would not be shielded from liability simply because the Magistrate decided to issue them. Malley, 475 U.S. at 345-46. However, given our conclusion that Detective Arnold was reasonable in seeking the warrants, the fact that the Magistrate subsequently issued them bolsters the reasonableness of Detective Arnold's actions. As Chief Judge Wilkinson aptly observed in Torchinsky:

13

When a police officer protects a suspect's rights by obtaining a warrant from a neutral magistrate, the officer should, in turn, receive some protection from suit under 42 U.S.C. § 1983. Otherwise, the threat of liability would force officers to continuously second-guess the considered decisions of magistrates. This in turn would promote delay in the execution of warrants, and alter the proper allocation of law enforcement functions.

942 F.2d at 262.**9**

3.

In this case, Detective Arnold took steps reasonably expected of him. The question before us is not whether he exhausted every potential avenue of investigation. Rather, for purposes of qualified immunity, we must simply determine whether Detective Arnold's actions were reasonable under the circumstances. That his efforts could have been more thorough, or even that his actions may have been mistaken, does not mean that they were unreasonable. As we stated in Torchinsky, "If reasonable mistakes were actionable, difficult questions of discretion would always be resolved in favor of inaction, and effective law enforcement would be lost." Id. at 261. In sum, there is simply no basis for a rule that would require law enforcement officers to take issue with or second-guess the considered judgments of prosecutors and magistrates. Arnsberg, 757 F.2d at 981.

_____

**9** In Massachusetts v. Sheppard , 468 U.S. 981 (1984), albeit in a different context (the application of the exclusionary rule of evidence with respect to a defective search warrant), the Supreme Court expressed sentiments that are informative here:

Whatever an officer may be required to do when he executes a warrant . . . we refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested.

Id. at 989-90.

14

IV.

Pursuant to the foregoing, Detective Arnold's actions satisfy the requirements of objective reasonableness upon which qualified immunity rests. We therefore reverse and remand for entry of judgment in favor of Detective Arnold.

REVERSED AND REMANDED

15