Rosemary **MUNYIRI**, Plaintiff

v.

Peter M. **HADUCH**, Jr., et al., Defendants.

Civil No. AMD 08–1953.

United States District Court, D. Maryland.

Nov. 2, 2008.

---

Robert David Schulte, Schulte Booth PC, Baltimore, MD, for Plaintiff.

Neal Marcellas Janey, Jr., Baltimore Police Department, David E. Ralph, Baltimore City Law Department, Alan D. Eason, State of Maryland Office of the Attorney General, Baltimore, MD, for Defendants.

## MEMORANDUM OPINION and ORDER

ANDRE M. DAVIS, District Judge.

This case stems from an arrest by a Baltimore City police officer following a traffic stop on I–83 in Baltimore City. Plaintiff Rosemary Munyiri asserts that she was pulled over for minor traffic offenses, arrested at gunpoint, and taken to the Baltimore Central Booking and Intake Facility ("CBIF"), where she was subjected to strip and visual body cavity searches. Munyiri has filed a multitude of damages claims pursuant to 42 U.S.C. § 1983 for violation of the Fourth Amendment against the following defendants: (1) Maryland Department of Public Safety and Correctional Services ("DPSCS"); (2) the Secretary of DPSCS ("Secretary Maynard"); (3) the Warden of the Central Booking and Intake Facility ("Warden Williams");(4) Unnamed correctional officers at CBIF; (5) the Baltimore City Police Department ("the BCPD"); (6) the Commissioner of the BCPD ("Commissioner Bealefeld"); (7) the arresting officer, Peter M. Haduch, Jr. ("Officer Haduch"); and (8) the Mayor and City Council of Baltimore City. Secretary Maynard, Warden Williams, Commissioner Bealefeld, and Officer Haduch were sued in both their official and individual capacities.

All defendants filed motions to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). The court held a hearing on October 27, 2008. At the hearing, plaintiff voluntarily dismissed her claims against the DPSCS, the official capacity claims against Secretary Maynard and Warden Williams, and the claims against the Mayor and City Council of Baltimore City. For the reasons set forth within, I shall deny the motions filed by Secretary Maynard and Warden Williams and grant in their entirety the remaining motions.

### I.

As this is a motion to dismiss under Rule 12(b)(6), the facts alleged in the complaint are assumed to be true. The following facts are alleged by plaintiff.[1]

---

1. The summary of plaintiff's allegations set forth above is supplemented with additional facts taken from the sworn statement of charges filed in state court by the arresting officer, defendant Haduch. Plaintiff quoted liberally from the statement of charges in her complaint but she did not attach a copy of the statement of charges to her complaint. At my request, plaintiff provided a copy of the statement of charges after the hearing. *See, e.g., Phillips v. LCI Int'l, Inc.,* 190 F.3d 609, 618 (4th Cir.1999)(noting that "a court may consider [a document not attached to the com-

Munyiri is a Registered Nurse who works at The Johns Hopkins Hospital. On April 12, 2008, she left the hospital at approximately 7:35 p. m. and began her commute home on a rainy and cloudy evening. Unbeknownst to Munyiri, an accident had occurred on I–83 North and Baltimore City police officers had blocked some of the northbound entrance ramps. Officer Haduch was positioned at the Madison Street ramp, which he had barricaded using his patrol vehicle and several road flares. Despite Haduch's apparent efforts to block the entrance ramp, Munyiri entered the ramp by driving past or over the road flares that had been deployed by Officer Haduch.

Officer Haduch proceeded after plaintiff and "chased" her for approximately four-tenths of a mile before plaintiff pulled over her vehicle. It is evident from Officer Haduch's statement of charges that he believed he was dealing with a potentially dangerous individual and that he believed that plaintiff was purposely evading his attempts to effect a traffic stop. In any event, upon stopping her, Haduch exited his police car, drew his service weapon, and approached Munyiri's car. He shouted repeatedly for Munyiri to turn off her vehicle before she complied. Similarly, he ordered her to throw her keys from the vehicle three times before she complied. Haduch then ordered plaintiff to exit her vehicle and go to the ground, whereupon he handcuffed her. Munyiri's car, person and purse were searched.

Haduch charged Munyiri with three misdemeanor traffic offenses: (1) negligent driving; (2) failure of driver to "curb" upon signal by police vehicle; and (3) attempt by driver to elude uniformed police by failing to stop.

Haduch transported Munyiri to CBIF, as are all persons arrested in Baltimore City. Upon plaintiff's arrival, a nurse took her vital signs and informed her that she would be strip searched. Officers at CBIF ordered plaintiff to disrobe and conducted a physical search of her hair and a visual search of her body cavities. She was also ordered to squat and cough while disrobed. After the search, Munyiri was put in a holding cell, where she waited for twenty-four hours before being released on bail.

At trial on July 2, 2008, Haduch failed to appear and the state entered a *nolle prosequi* as to all the charges against Munyiri. Munyiri filed this action about three weeks later.

## II.

In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court jettisoned its longstanding approach to motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), i.e., the "no set of facts" standard first articulated by the Court in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court adopted a less generous approach by which to judge a complaint's sufficiency: whether the plaintiff stated "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. The Court noted that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964–65 (internal quotations omitted).

## III.

### A

Plaintiff alleges that Secretary Maynard and Warden Williams violated her Fourth

plaint] in determining whether to dismiss the complaint [where the document] was integral to and explicitly relied on in the complaint and [where] the plaintiffs do not challenge [the document's] authenticity")(alterations added).

and Fourteenth Amendment right to be free of an unreasonable search by implementing and maintaining a policy and practice of conducting strip searches and visual body cavity searches of all persons admitted to the CBIF, regardless of the charges filed against, or the circumstances surrounding the arrest of, the individual. Specifically, plaintiff asserts a claim of supervisory liability against Maynard and Williams in their individual capacity.

■ Supervisory liability may attach under § 1983 if a plaintiff can establish: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tactic authorization of the alleged offense practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Jones v. Murphy,* 470 F.Supp.2d 537, 545 (D.Md.2007) (citing *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir.1994)). In *Jones,* Judge Blake fully considered claims by a putative class of persons arrested in Baltimore City who were treated, or were threatened with treatment, essentially identical to that allegedly suffered by plaintiff here. Indeed, the parties acknowledged at the hearing in this case that plaintiff would be a member of the putative class in the litigation pending before Judge Blake in *Jones.* Plaintiff has basically incorporated by reference the allegations in *Jones* and thus, together with the specifics of her arrest and detention, has adequately plead the minimum facts necessary to state a claim of supervisory liability for a Fourth Amendment violation.

■ Secretary Maynard and Warden Williams assert their right to qualified immunity. In assessing a claim of qualified immunity, the court employs a two-pronged analysis. *Saucier v. Katz,* 533 U.S. 194, 201–02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "[T]he court must first determine if the pleaded facts demonstrate that the defendant's conduct violated a constitutional right." *Blankenship v. Manchin,* 471 F.3d 523, 528 (4th Cir.2006). If a constitutional violation has occurred, the second step requires the court to consider whether the right was clearly established, measured by whether a reasonable officer would have believed the conduct to be lawful under the same or similar circumstances. *Saucier,* 533 U.S. at 201–02, 121 S.Ct. 2151. Thus, where an officer has invoked qualified immunity and relies on it in a dispositive motion, the court must be persuaded: (1) that the officer actually committed a constitutional violation, and (2) that the defendant's conduct was objectively unreasonable under well-settled law. *Henry v. Purnell,* 501 F.3d 374, 379–82 (4th Cir.2007). For the reasons stated by Judge Blake in *Jones,* qualified immunity does not, as a matter of law at this early stage of the case, foreclose plaintiff's claim here. *Jones,* 470 F.Supp.2d at 547 (citing *Amaechi v. West,* 237 F.3d 356, 362–65 (4th Cir.2001) (finding a strip search unconstitutional for an individual arrested for a misdemeanor noise violation); *Logan v. Shealy,* 660 F.2d 1007, 1013–14 (4th Cir. 1981) (finding a strip search unreasonable when done to an arrestee whose offense was not likely to involve weapons or contraband)).

### B

Plaintiff seemingly asserts a veritable smorgasbord of § 1983 claims against defendants Officer Haduch, Commissioner Bealefeld and BCPD (referred to herein as "police defendants"), but distilled to their essence, the claims are Fourth Amend-

ment unreasonable seizure claims.[2] In their consolidated motion to dismiss, the police defendants assert that the BCPD is a state agency, and that therefore, the agency and, as to the official capacity claims, Commissioner Bealefeld and Officer Haduch, are entitled to immunity under the Eleventh Amendment.

██ Of course, it is well-settled that a state agency (or agency official sued in her official capacity) does not qualify as a "person" amenable to suit under 42 U.S.C. § 1983. *Will v. Michigan Dept. Of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The issue here is whether the BCPD is a state agency for Eleventh Amendment purposes.[3] Members of this court have found that it is not. *Chin v. City of Baltimore,* 241 F.Supp.2d 546, 548 (D.Md.2003) ("[t]he court determines that the Baltimore Police Department is not entitled to Eleventh Amendment immunity. As a result, the Baltimore Police Department is a 'person' subject to suit under § 1983."); *Hector v. Weglein,* 558 F.Supp. 194 (D.Md.1982) (Kaufman, J.) (finding that the BCPD liable for suit under § 1983), and I agree with those determinations. Thus, the police defendants are fully subject to suit under § 1983. Nevertheless, for the reasons stated below, plaintiff has failed to state a claim against those defendants.

Plaintiff alleges against Office Haduch a Fourth Amendment unreasonable seizure claim based on the traffic stop and her arrest, and a Fourth Amendment excessive force claim based on the manner of the stop and arrest. Haduch asserts that, as a matter of law, he had reasonable articulable suspicion to make the traffic stop, probable cause to effect the custodial arrest of plaintiff, and that he did not employ excessive force in effecting the stop and the arrest. I agree.

██ First, there plainly was reasonable articulable suspicion justifying Haduch's decision to stop plaintiff. Reasonable suspicion is "a particularized and objective basis for suspecting the person stopped of criminal activity." *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Here, Haduch was blocking the Madison street ramp to I–83 North to protect the scene of an accident on the highway. Plaintiff acknowledges that she drove past five road flares and a police car with its emergency lights flashing and drove onto the highway. Since plaintiff did not stop on the ramp despite the police car and flares (as any reasonable motorist would behave), as a matter of law, Officer Haduch had sufficient facts to constitute reasonable suspicion to pull her over to investigate why she would do such a thing.[4]

---

**2.** In the circumstances here, to the extent that plaintiff alleges that any defendant was negligent, e.g., that Officer Haduch negligently established the barricade at the entrance ramp to the highway, such claims are not cognizable under § 1983. *Cf. Daniels v. Williams,* 474 U.S. 327, 330, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)("[I]n any given § 1983 suit, the plaintiff must ... prove a violation of the underlying constitutional right; and depending on the right, merely negligent conduct may not be enough to state a claim.").

**3.** Defendants argue vigorously that the BCPD *is* a state agency and cites several state court

opinions to that effect. *E.g., Clark v. O'Malley,* 169 Md.App. 408, 431, 901 A.2d 279 (2006), *aff'd by Mayor & City Council v. Clark,* 404 Md. 13, 24, 944 A.2d 1122 (2008). But this assertion misses the point. The issue not whether the BCPD is an agency of the state, but instead, whether it is the type of agency that is entitled to the benefit of Eleventh Amendment immunity.

**4.** As I speculated during the hearing, whether plaintiff was simply tired from a long shift at the hospital, inattentive to the perhaps less-than-perfect blockade of the ramp, or distracted by the misty climatic conditions, Haduch

 Furthermore, once plaintiff acceded to Haduch's repeated efforts to stop her vehicle and pulled to the side of the highway, a reasonable officer could reasonably have concluded that he had probable cause to arrest plaintiff. Probable cause to arrest "is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men … act." *Maryland v. Pringle*, 540 U.S. 366, 370, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). Here, Haduch witnessed her commit three alleged misdemeanor driving offenses: negligent driving, failure of driver to curb upon signal by police vehicle, and attempt by driver to elude uniformed police by failing to stop. Indeed, plaintiff concedes that she did not immediately pull over when requested, although she alleges she pulled over as soon as it was, in her judgment, safe to do so. Since Haduch witnessed Munyiri commit these alleged misdemeanor offenses, he had probable cause to arrest her without a warrant.[5]

 Nor did Haduch use excessive force in arresting Munyiri. In the Fourth Circuit, the right to make an arrest "carries with it the right to use the amount of force that a reasonable officer would think necessary." *Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir.1988). Claims of a *de minimis* injury, such as too-tight handcuffs, are insufficient. *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir.1994) (en banc); *Carter v. Morris*, 164 F.3d 215, 219 n. 3 (4th Cir.1999). Here, plaintiff alleges that Officer Haduch attempted to ram her car with his squad car, that he pointed his service weapon at her, and that he forced her to lie prone in the highway. However,

plaintiff does not allege that Haduch contacted her car; nor does she allege that he shot her or even touched her with his gun. The sum of her complaint is that she had to lie down on the wet ground to be handcuffed. Although no doubt this felony-type arrest was extraordinarily unpleasant and inconvenient, as a matter of law, those actions by Haduch do not rise to the level of a constitutional violation.

 Plaintiff's claim against Commissioner Bealefeld alleges that he was responsible for developing and implementing the policies of the BCPD, including the policy regarding when and under what circumstances persons are arrested "for minor traffic offenses" and when such persons are to be transported to CBIF. As Haduch committed no violation of plaintiff's Fourth Amendment rights in this regard, no claim lies against the Commissioner on the basis of Haduch's actions.

 Finally, plaintiff suggested at the hearing that the police defendants were sued on an "entrustment liability" theory, under which they are said to be liable for the acts and omissions of Secretary Maynard and Warden Williams for the searches occurring at CBIF. As Judge Blake noted in *Jones*, the Fourth Circuit has neither adopted nor rejected an "entrustment liability" theory to § 1983 claims, 470 F.Supp.2d at 552–53. Under an entrustment theory, the plaintiff must show that the defendant has (1) a policy of entrustment; (2) knowledge of the constitutional violations at the detaining entity; and that (3) the entrusting entity must have had a choice over whether to follow

clearly acted reasonably in pursuing her to determine why she had simply driven past his barricade. It would have been irresponsible for an officer to have done anything but pursue her.

**5.** *Cf. Wadkins v. Arnold*, 214 F.3d 535, 541 & n. 7 (4th Cir.) ("Reasonable law enforcement officers are not required to exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established."), *cert. denied*, 531 U.S. 993, 121 S.Ct. 485, 148 L.Ed.2d 458 (2000).

the challenged course of action. *Id.* at 553. The gist of the theory is that a municipal body can be liable under § 1983 if it maintains a policy of entrusting its arrestees to a jail or holding facility with knowledge that arrestees will face unconstitutional treatment upon their confinement. *Id.*

In her carefully-reasoned analysis, Judge Blake concluded that the theory had no applicability to the circumstances in Baltimore City, as follows:

> Implicit in the policy component required to impose liability is that the entrusting entity has formulated the policy; that is, that it had a choice over whether to follow the challenged course of action. *See Powell v. Barrett,* 376 F.Supp.2d 1340, 1356–57 (N.D.Ga.2005) (explaining that the entrusting entity cannot be liable "for constitutional injuries suffered by a detainee unless it had the authority to choose whether to entrust such a person to the facility.") (unpublished) (internal citations omitted). The City defendants persuasively argue that they have no choice because they are not legally permitted to maintain their own facility; therefore it would be unfair to hold them liable for using the facility they are required to use by state law. (Mem. Supp. City Defs.' Mot. Dismiss at 9; City Defs.' Reply Mem. Supp. Mot. Dismiss at 4–5.) *See also* Md.Code Ann., Corr. Servs. §§ 5–102, 201, 401, 404 (2006). The steps which the plaintiffs contend the City defendants could have taken to prevent violations of arrestees' constitutional rights do not suggest the existence of choice sufficient to give rise to liability. For instance, the plaintiffs argue that the City defendants could have filed a lawsuit against CBIC. (Pls.' Opp'n Mot. Dismiss at 35.) In fact, the City attempted to intervene as a plaintiff in the state court suit regarding over detentions, but was denied leave to do so.

(Mem. Supp. City Defs.' Mot. Dismiss at 12.) This illustrates the flaw with the argument that the ability to file a lawsuit shows the existence of meaningful control: the court ultimately decides the outcome of the issues in a suit, thus filing a suit is, on some level, an admission that external help is needed to effectuate the desired results.

The plaintiffs also argue that there is a category of arrestees whose violations could have been processed with citations and thus, in arresting them, the City defendants essentially chose to take them to CBIC. (Pls.' Opp'n Mot. Dismiss at 42–43.) The complaint, however, does not identify such a group. Instead it categorizes the plaintiffs based on the types of constitutional violations they allegedly suffered (e.g., equal protection strip search class), and would make the City defendants liable for all persons in a given category of violations, even if the underlying arrest was clearly justified. (*See* City Defs.' Reply Mem. Supp. Mot. Dismiss at 6.) There may be a group for which citations could or should have been used; however, even if the plaintiffs had pled this, there would be significant concerns for the court in attempting to define the membership in this group, as doing so would likely necessitate more judicial assessment of discretionary law enforcement priorities and procedures than would be warranted. Therefore, the potential existence of such a group fails to supply the element of choice necessary to give rise to liability under the "entrustment liability" theory.

Because the court finds that the unique facts of this case render the "entrustment liability" theory inapplicable, there is no need to consider arguments about its validity generally under Fourth Circuit law.

*Id.* at 553–54. I find this reasoning compelling. In particular, in light of recent Supreme Court authority, *see Virginia v. Moore,* —— U.S. ——, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008) (arresting officer commits no violation of the Fourth Amendment simply because arrest, though supported by probable cause, violated state law), there is scant justification for calling into question the discretionary decision of Officer Haduch to arrest plaintiff rather than to issue a citation to plaintiff under the circumstances here.

### IV.

For the reasons stated herein, the motion to dismiss filed by defendants Maynard and Williams is DENIED and those defendants shall file their answer to the complaint on or before November 24, 2008. In all other respects, the motions to dismiss are GRANTED and ALL CLAIMS against the remaining defendants are DISMISSED WITH PREJUDICE.