KING, Circuit Judge, dissenting: I write separately to dissent from the majority’s denial of Detective Abbott’s qualified immunity claim. With great respect for my good colleagues, their decision fails to recognize the controlling facts that undermine the § 1983 claim of plaintiff Sims. That is, Detective Abbott was acting pursuant to the advice of counsel and adhering to a court order. In my view, Abbott’s actions were entirely consistent with applicable law and the Fourth Amendment. To explain my position more fully, this dissenting opinion contains three short segments. First, I .emphasize the sanctity and importance of court orders. Second, I review the controlling facts .and some guiding legal principles. Finally, I explain that Detective Abbott did not contravene any constitutional right and-that he is entitled to qualified immunity. Put simply, I would affirm the district court. A. A duly issued search warrant is a court order and is entitled to be respected and complied with, particularly by law enforcement officers, members of the public, and the courts. The simple rule that a court order is to be obeyed is foundational to our legal system and an independent judiciary. See Stephen G. Breyer, Judicial Independence in the United States, 40 St. Louis U. L.J. 989, 994-96 (1996) (emphasizing importance .of court orders in maintaining the rule of law in an orderly society); see also Cooper v. Aaron, 358 U.S. 1, 17-19, 78 S.Ct. 1401, 3 L.Ed.2d 5, 3 L.Ed.2d 19 (1958) (holding that courts and public officials are bound by constitutional rulings of Supreme Court). As Alexander Hamilton explained in The Federalist papers, the effective administration of justice “contributes, more than any other circumstance, to impressing upon the minds of the people affection, esteem, and reverence toward the government.” The Federalist No. 17 (Alexander Hamilton); see also Breyer, Judicial Independence, 40 St. Louis U. L.J. 989, 995-96 (1996) (emphasizing that “the most important reason to think that a judge’s decision will be efficacious is cultural, rather than institutional”). The Supreme Court itself once emphasized, in a proceeding from this Circuit, that “unless we'wish anarchy to prevail within the federal judicial- system, a precedent of this court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be.” See Hutto v. Davis, 454 U.S. 370, 375, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982). When a judicial officer—such as a state court magistrate—has issued a search. warrant upon probable cause, specifying therein that which is to be searched and seized, it is unreasonable to require the officer charged with executing the warrant to reject the judicial decision and disobey the court’s directive. See United States v. Leon, 468 U.S. 897, 920 n.21, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (citing Attorney General’s Task Force on Violent Crime, Final Report (1981), for the proposition that police officers have á “sworn duty to carry out [the] provisions” of search and arrest warrants). We have consistently recognizéd and applied these guiding principles. As we explained a few years back, “It would be plainly unreasonable to rule that the [ ] officers ... must take issue with the considered judgment of an assistant [prosecuting] Attorney and the [] magistrate.” See Wadkins v. Arnold, 214 F.3d 535, 543 (4th Cir. 2000). , The majority’s ruling today—that Detective Abbott can be personally hable for failing to disobey the search warrant-requiring Sims to be promptly searched— could lead law officers to second-guess court orders and avoid judgment calls in gray areas. As oúr friend Judge Wilkinson aptly emphasized more than twenty-five years ago, “If reasonable mistakes were actionable, difficult questions of discretion would always be resolved in favor of inaction, and effective law enforcement would be lost.” See Torchinsky v. Siwinski, 942 F.2d 257, 261 (4th Cir. 1991). B. 1. We have consistently encouraged law enforcement officers to seek and secure search “warrants because magistrates from their detached perspective serve as the essential checkpoint between the Government and the citizen.” See Torchinsky, 942 F.2d at 261; see also United States v. Clarke, 842 F.3d 288, 293 (4th Cir. 2016) (“The Fourth Amendment generally requires police to secure a warrant before conducting a search.”). Although unwarranted' searches may sometimes properly occur—for example, in exigent circumstances, in searches incident to lawful arrests, in plain view seizures, in vehicular searches, and with consent—a warrant is generally required by the Fourth Amendment for searches and seizures. In this situation, Detective Abbott complied with that constitutional mandate, and his actions were carried out pursuant to a lawful search warrant. Detective Abbott personally applied to the Virginia magistrate for the search warrant, but he did so only after consulting with, receiving advice from, and complying with the directives of the Commonwealth’s Attorney for Prince William County.[1] We have recognized that, although obtaining a search warrant on the advice of the prosecutor does not automatically render the search reasonable, it is a compelling factor for consideration. See Buonocore v. Harris, 134 F.3d 245, 253 (4th Cir. 1998). In our Wadkins decision, we explained that, in assessing a detective’s qualified immunity claim, the “most compelling aspect of [the] conference [between the detective and prosecutor] is clear: at its conclusion, the Commonwealth’s Attorney, on behalf of the Commonwealth of Virginia, authorized warrants for the [search] of [the suspect].” See 214 F.3d at 542. We therein also ruled that, even if a warrant is later deemed invalid, law enforcement officers are not required to “secondguess the legal assessments of trained lawyers” and need not disregard the warrant in the first instance. Id. at 543. 2. In his affidavit for the search warrant that he later executed, Detective Abbott sought photos of Sims to “be used as comparisons [to] recovered forensic evidence from the victim and suspect’s electronic devices.” See Supp. J.A. 74-75. Finding probable cause shown, the magistrate in Prince William County issued the search warrant at 5:03 p.m. on June 3, 2014. The warrant provided as follows: To any authorized officer: You are hereby commanded in the name of the Commonwealth to forthwith search the following place, person, or thing either in day or night: Trey Austin Sims, Date of Birth [ ]. A white male, approximately 5'10" tall and approximately 150 pounds. For the following property, objects and/or persons: Photographs of the genitals, hands, and other parts of the body of Trey Sims that will be used as comparisons in recovered forensic evidence from the victim and suspect’s electronic devices. This includes a photograph of the suspect’s erect penis. See Supp. J.A. 72-75 (emphasis added). Approximately an hour after the magistrate issued the forthwith search warrant, at 6:10 p.m., Detective Abbott and two other officers executed it. On June 5, 2014, Abbott reported to the court in’ the return that “[t]he following items, and no others, were seized under authority of this warrant: Photos.” Id. at 73 (emphasis added). C. In 2001, the Supreme Court established a two-pronged analysis for a qualified immunity claim interposed by a law enforcement officer. That assessment first requires a determination of whether the officer’s conduct violated a constitutional right. Second, if a constitutional violation has been shown, the court must decide whether the constitutional right was clearly established at the time. See Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). In 2009, the Court authorized that analysis to be applied in a sequence reserved to the court’s discretion. See Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). 1. In the context of searches and seizures, “the ultimate touchstone of the Fourth Amendment is reasonableness” under the circumstances. See Brigham City v. Stuart, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006). For example, other than the well-recognized exceptions, “searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment.” See Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). On the other hand, the' existence of a search warrant creates a rebuttable presumption that the search was reasonable. See Torchinsky, 942 F.2d at 262. And for the search to be reasonable, it does not have to be conducted flawlessly nor by the least intrusive means. See Skinner v. Ry. Labor Executives’ Ass’n, 489 U.S. 602, 629 n.9, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). There is little deterrent to excluding evidence wher¿ “an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.” See Leon, 468 U.S. at 920, 104 S.Ct. 3405. Thus, the existence of a search warrant plays a significant role in the determination of whether- a search and seizure was reasonable. This principle is important,- and it exists because the search warrant mandate insures the reliable and detached scrutiny of a neutral magistrate, rather than the judgment of a single law officer. See Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948); Put succinctly, where a police officer has sought and obtained a search warrant and acted within its scope, the resulting search-is presumptively reasonable. In this situation, the safeguards guaranteed by the Fourth Amendment were carefully observed—i.e., the search of Sims was conducted pursuant to a search warrant issued by the neutral magistrate, and it was supported by probable cause. See Johnson, 333 U.S. at 14, 68 S.Ct. 367. This was therefore a warranted search, carried out under the law of Virginia and in compliance with -Fourth Amendment jurisprudence.- Because Abbott obtained a search warrant and acted within its scope, his search of Sims is presumptively reasonable., See Torchinsky, 942 F.2d at 262, Therefore,, the § 1983 claim alleged by Sims plainly fails the first prong of Saucier, that is, no constitutional right-was contravened in these circumstances. Strikingly, Detective Abbott did not go directly to the Prince William County magistrate seeking the search warrant. He went first to that county’s Commonwealth’s Attorney and solicited the advice and approval of the prosecutor. We have ■recognized—in another qualified immunity case arising in the Old Dominion—that an investigating detective’s “conference with the Commonwealth’s Attorney and the subsequent issuance of the warrants by a neutral- and detached magistrate, weigh heavily toward a finding that [the detective] is immune.” See Wadkins, 214 F.3d at 541. Our Wadkins decision is precedent here, and it drew heavily on Judge Wilkinson’s opinion in Torchinsky. As that decision adroitly explained: When a police officer protects a suspect’s rights by obtaining a warrant from a neutral magistrate, the officer should, in turn, receive .some protection from suit under 42 U.S.C. § 1983. Otherwise, the threat of liability would force officers to continuously second-guess the considered decisions of magistrates. This in. turn would promote delay in the execution of warrants, and alter the proper allocation of law enforcement functions. See Torchinsky, 942 F.2d at 262. In executing this search warrant, Detective Abbott was acting pursuant to a court order that he had secured on the advice and direction of the Commonwealth’s Attorney. The search was thus reasonable and, in my view, Abbott did not violate any constitutional right. 2, If Detective Abbott somehow contravened a Fourth Amendment right (as the majority .rules today), the § 1983 claim alleged by, Sims would nevertheless fail under Saucier's clearly established prong, which requires an assessment of “whether the constitutional violation was of a clearly established right.” See Henry v. Purnell, 652 F.3d 524, 534 (4th Cir. 2011) (an banc). In making that analysis, we are obliged to conduct an objective “reasonable officer test” of Detective Abbott’s actions. See id. The doctrine of “[qjualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful,” Hope v. Pelzer, 536 U.S. 730, 731, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). To be true to this central tenet of qualified immunity, the right allegedly violated must be defined “at a high level of particularity.” See Campbell v. Galloway, 483 F.3d 258, 271 (4th Cir. 2007). As such, “existing precedent must.have placed the statutory or constitutional question beyond debate.” Ashcroft v. al-Kidd, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). In other words, a constitutional right is clearly established only “when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.” Id. (alterations and internal quotation marks omitted). As the district court observed when it rejected Sims’s § 1983 claim, “even if this conduct violáted Plaintiffs rights, the ‘clearly established’ standard is. not satisfied here.” See Sims v. Richardson, No. 1:16-cv-572, at 9 (E.D. Va. Sept. 19, 2016), EOF No. 61. The court decisions relied upon by the majority show that there was no clearly established constitutional right—that every reasonable law officer, would have recognized—requiring Abbott to- disregard the search warrant. See Anderson v. Creighton, 483 U.S. 635, 639-641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (discussing objective standard imposed on officers executing warrant for purposes of qualified immunity). In my view, no reasonable police officer or lawyer would have considered this search warrant, duly- issued by the Virginia magistrate, to violate a clearly established constitutional right. Indeed, Detective Abbott actually sought and obtained two search warrants—from two different magistrates—at the behest of the Commonwealth’s Attorney. The initial, search warrant was the only .one executed, but two neutral and detached Virginia magistrates separately found probable cause to exist. See supra note 1. . Importantly, nine of the ten court decisions relied upon by the majority to support tjieir view of the clearly established prong involved unwarranted searches. Those decisions therefore could not place any reasonable lawyer—much less a reasonable police officer—on notice that the warranted search carried out by Detective Abbott would violate a clearly established constitutional right.[2] The majority’s ruling—that any reasonable law enforcement officer would have recognized that the search warrant violated a clearly established constitutional right—is not supported by any precedent, much less the compelling precedent that would “have placed the statutory or constitutional question beyond debate.” See al-Kidd, 563 U.S. at 741, 131 S.Ct. 2074. This lack of precedent fails to even create a “gray area” that would require a reasonable police officer to make a close call. See Braun v. Maynard, 652 F.3d 557, 560 (4th Cir. 2011) (observing that qualified immunity “ensures that officials are not unfairly strung up for money damages as a result of bad guesses in gray areas”). Addressing the merits of Saucier’s clearly established prong, I agree with the district court that Abbott’s conduct did “not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” See Sims, No. 1:16-cv-572, at 8, ECF No. 61. As we have recognized heretofore, “there is simply no basis for a rule that would require law enforcement officers to. take issue with or second-guess the considered judgments of prosecutors and magistrates.” See Wadkins, 214 F.3d at 543. Put simply, the search warrant at issue here was properly and legally issued, it was complied with, and Detective Abbott is entitled to qualified immunity. I respectfully dissent. . On this record, search warrants were issued on June 3, 2014, and again on July 1, 2014, by two different magistrates. See Supp. J.A. 72, 76. The June warrant was the only one executed. In executing the June warrant, Abbott was unable to obtain some of the photos being sought. Because the prosecutor and the detective agreed that additional photos were necessary, Abbott was directed to seek the July warrant.- That warrant was never executed and was voided. (Citations herein to "Supp. J.A._” refer to the contents of the Supplemental Joint Appendix filed by the parties in this’appeal.) . Nearly all of the court decisions relied upon the by the majority—for their ruling that the constitutional right contravened by Abbott was clearly established—involved warrantless searches. See Florence v. Bd. of Chosen Freeholders, 566 U.S. 318, 132 S.Ct. 1510, 182 L.Ed.2d 566 (2012) (unwarranted strip searches of detainees); Illinois v. Lafayette, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983) (unwarranted search of shoulder bag); Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (warrantless searches of pretrial detainees); King v. Rubenstein, 825 F.3d 206 (4th Cir. 2016) (coerced consent and unwarranted removál of penile implants); United States v. Edwards, 666 F.3d 877 (4th Cir, 2011) (warrantless strip search incident to arrest); Amaechi v. West, 237 F.3d 356 (4th Cir. 2001) (warrantless search invading arrestee’s genitalia in public); Logan v. Shealy, 660 F.2d 1007 (4th Cir. 1981) (unwarranted visual strip searches of detainees); Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L,Ed.2d 908 (1966) (unwarranted blood draw from arrestee); Wood v. Clemons, 89 F.3d 922 (1st Cir. 1996) (warrantless search of prison visitors), The Supreme Court’s decision in Winston v. Lee, the other case relied upon by the majority, involved a court order that had authorized surgical removal of a bullet. See 470 U.S. 753, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985). That decision, however, is readily distinguishable. It had nothing to do with a § 1983 claim or whether a constitutional right was clearly established.