PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

Rose C. Merchant, Doctor,

    *Plaintiff-Appellee,*

    v.

Robert M. Bauer, Officer,
Individually,

    *Defendant-Appellant,*

    and

Fairfax County, Virginia; Sharon
Bulova, Fairfax County Board of
Supervisors; Jonathan Nytes,
Officer, Individually; Gervais
Reed, Lieutenant, Individually;
John Doe 1 Through John Doe
20, Both inclusive, regardless of
number being each a separate
individual and being fictitious and
unknown to the Plaintiff the
persons or parties intended being
former and or current Fairfax
County, Virginia employees,

    *Defendants.*

No. 11-1392

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, Senior District Judge.
(1:10-cv-00376-TSE-TRJ)

Argued: December 7, 2011

Decided: April 26, 2012

Before KING, GREGORY, and DAVIS, Circuit Judges.

---

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Gregory and Judge Davis joined.

---

## COUNSEL

**ARGUED:** Benjamin Rogers Jacewicz, COUNTY ATTORNEY'S OFFICE, Fairfax, Virginia, for Appellant. Kenneth David Bynum, BYNUM & JENKINS, PLLC, Alexandria, Virginia, for Appellee. **ON BRIEF:** David P. Bobzien, County Attorney, Peter D. Andreoli, Jr., Deputy County Attorney, COUNTY ATTORNEY'S OFFICE, Fairfax, Virginia, for Appellant.

---

## OPINION

KING, Circuit Judge:

Dr. Rose C. Merchant initiated this lawsuit in April 2010 against Robert M. Bauer, a police officer in Fairfax County, Virginia. Dr. Merchant, a licensed psychologist who resides in Prince George's County, Maryland, is a former Deputy Director of the Department of Corrections of that county. In her Complaint, Merchant alleged malicious prosecution under the law of Virginia, as well as a claim pursuant to 42 U.S.C. § 1983, premised on the Fourth Amendment. Defendant Bauer moved for summary judgment, contending that the doctrine of qualified immunity barred Merchant's § 1983 claim, and that Merchant was unable to prove malicious prosecution. The district court agreed with Bauer on the malicious prosecution claim, but permitted Merchant's § 1983 claim to go forward, rejecting Bauer's assertion of qualified immunity.

Bauer appeals the court's denial of qualified immunity, and, as explained below, we affirm.

I.

Around noon on February 8, 2008, the Virginia State Police received a 911 call from a motorist on I-495 in Fairfax County, Virginia, reporting that he had been forced off the highway by a black Mercedes-Benz sedan displaying flashing blue front grill lights.[1] The caller reported the Maryland license number on the Mercedes, and the investigation was assigned to Officer Bauer of the County Police Department.

Bauer soon discovered that a black 2008 Mercedes-Benz with a matching Maryland license number was registered to Dr. Merchant under her married name, Rose Coretta Clark, of Prince George's County. Merchant lived there with her new husband, Rafael Desmond Clark, who, Bauer also learned, was a convicted felon. Clark had recently served as a police informant, making controlled buys of cocaine in Maryland's Anne Arundel County. Bauer sought to call Dr. Merchant, and left voicemail messages on the phone at her residence. Upon speaking with Dr. Merchant and Clark on February 9, Bauer ascertained that Clark had been driving the Mercedes in Virginia at the time of the report. Bauer asked them to bring the vehicle to Annandale, Virginia, for inspection, falsely representing that the complainant had reported contact damage to his automobile. Bauer's representations were for the purpose of enticing Merchant and her husband to make the drive to Fairfax County.

On the evening of February 9, Bauer, accompanied by Fair-

---

[1]The facts underlying this appeal are drawn from the summary judgment record made after discovery in the district court, and are presented in the light most favorable to Dr. Merchant, as the non-moving party. *See George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 392 (4th Cir. 2009).

fax County Officers Brim and Nytes, met Dr. Merchant and Mr. Clark at a 7-Eleven convenience store in Annandale. The officers were thereafter joined briefly by their supervisor, Lieutenant Reed. After obtaining Dr. Merchant's consent to search the Mercedes, Bauer found no blue lights or other indicia of police customization, nor did he discover any evidence that such equipment had ever been installed or removed.

During a lengthy and occasionally testy encounter outside the 7-Eleven, Bauer's attention was attracted to what he perceived to be a badge that Dr. Merchant held in her jacket pocket. She did not, however, present the badge to Bauer (and Bauer never demanded that she produce or show it). Indeed, the badge was always sufficiently concealed that Bauer could not discern its text or markings. Merchant's body language, however, caused Bauer to ask "[W]hat do you want to show me?" to which she responded, "I'm not showing you anything." J.A. 149.[2] Merchant told Bauer several times that she "work[ed] in public safety," recited that she was Deputy Director of the Prince George's County Department of Corrections, that is, "second in charge," and once referred to "my sheriffs."

Dr. Merchant, agitated with Officer Bauer's behavior and pursuit of a false allegation, lamented that, "you could have at least give[n] me professional courtesy. You did not." *Id.* at 174. Bauer explained that he had asked Prince George's County police officers to leave a note at Dr. Merchant's Maryland home, requesting that he be contacted. In response, Merchant speculated that a note was not left because the officers had spotted her other vehicle in the driveway. Merchant referred to that vehicle, a county-issued, unmarked white Impala, as her "police car," using her hands to make "air quotes" (indicating quotation marks in mid-air). *Id.* at 186-87. Officer Bauer concluded that the Mercedes had not been

---

[2] Citations to "J.A. ___" refer to the Joint Appendix filed by the parties in this appeal.

equipped with flashing blue lights, and after additional banter, the 7-Eleven encounter concluded.

Upon reviewing video and audio recordings of the 7-Eleven encounter, Bauer was persuaded that Dr. Merchant had, on that occasion, unlawfully impersonated a police officer, in violation of Virginia Code Section § 18.2-174. That statute provides that

> Any person who shall falsely assume or exercise the functions, powers, duties and privileges incident to the office of sheriff, police officer, marshal, or other peace officer, or who shall falsely assume or pretend to be any such officer, shall be deemed guilty of a Class 1 misdemeanor.

Va. Code § 18.2-174 (the "Impersonation Statute"). Bauer followed up on the 7-Eleven encounter with a phone call to Lieutenant Colonel Verjeana McCotter-Jacobs, a Division Chief of the Prince George's County Department of Corrections. McCotter-Jacobs verified that Dr. Merchant was Deputy Director of the Department of Corrections and confirmed her status as a civilian employee. McCotter-Jacobs also advised Bauer that some civilian officials of Prince George's County are authorized to carry badges. Dr. Merchant's boss, Director of Corrections Alfred J. McMurray, was thereafter informed of the Virginia investigation.[3]

---

[3]According to Officer Bauer, McCotter-Jacobs told him that Dr. Merchant had obtained her badge without the authorization of Director McMurray. McCotter-Jacobs does not recall having addressed Dr. Merchant's situation, but testified that she would have informed Bauer (or anyone else) that, in general, only Director McMurray could authorize issuance of a badge. Officer Bauer asserted that he spoke again with McCotter-Jacobs after she had followed up with Director McMurray, and that McCotter-Jacobs relayed to him McMurray's statement that Dr. Merchant was not authorized to carry a badge. Neither Director McMurray nor McCotter-Jacobs recall a follow-up conversation. It appears, however, that Director McMurray's predecessor had authorized Dr. Merchant to carry a

Officer Bauer also studied the opinion of the Virginia Court of Appeals in *English v. Commonwealth*, 598 S.E.2d 322 (Va. Ct. App. 2004), which upheld an Impersonation Statute conviction. Bauer believed that the behavior of the defendant in *English* was similar to Dr. Merchant's conduct in this case. Bauer then met with a deputy Commonwealth's Attorney, who advised Bauer that he "had a good case" for prosecuting Dr. Merchant for impersonating a police officer. As a result, Bauer went to a state magistrate and presented sworn testimony to obtain an arrest warrant against Merchant. The content of that testimony is not, however, in this record. The warrant was issued on February 13, 2008, charging Merchant with violating the Impersonation Statute. J.A. 117. Merchant, accompanied by counsel, turned herself in to the Virginia authorities on February 19, 2008, and she was handcuffed and processed. Two days later, she was fired by Prince George's County. After being advised of her new husband's criminal record, Merchant also had her marriage annulled.

Dr. Merchant went to trial in Fairfax County on the Virginia Impersonation charge on April 17, 2008. After viewing the police video and considering the evidence, including Bauer's testimony regarding the 7-Eleven encounter, the state court, in a bench trial, dismissed the charge, explaining that "There's no case." *Id.* at 227. The court observed that, under the evidence, Merchant had repeatedly identified her county position to Bauer, accurately referred to her work in public safety, but "never indicated she was in law enforcement at any time." *Id.* at 226-27.

---

badge. The district court concluded that whatever Bauer was told by McCotter-Jacobs about the badge authorization constituted a genuine issue of material fact that had to be resolved in Dr. Merchant's favor on Bauer's motion for summary judgment. As the court's opinion observed, "Because the disputed facts, if resolved in favor of Officer Bauer, might lead a reasonable jury to conclude that he is entitled to qualified immunity, the qualified immunity defense remains available to Officer Bauer at trial." *Merchant v. Fairfax Cnty.*, 778 F. Supp. 2d 636, 649 n.14 (E.D. Va. 2011).

On April 5, 2010, Dr. Merchant filed a pro se complaint in the District of Maryland against Bauer and several other defendants, alleging claims under 42 U.S.C. § 1983 for deprivation of her Fourth Amendment right to freedom from seizure without probable cause, and also asserting her state law claim for malicious prosecution. Her lawsuit was thereafter transferred to the Eastern District of Virginia, and the defendants moved to dismiss. Merchant then retained counsel, after which the parties agreed that the case would proceed only against Fairfax County, County Officers Bauer and Nytes, and Lieutenant Reed. Merchant later agreed to dismiss her claims against all the defendants except Officer Bauer, who, at the close of discovery, moved for summary judgment. With respect to the § 1983 Fourth Amendment claim, Bauer interposed his assertion of qualified immunity.

By its Order and Memorandum Opinion of April 11, 2011, *see Merchant v. Fairfax County*, 778 F. Supp. 2d 636 (E.D. Va. 2011) (the "Opinion"), the district court granted summary judgment to Bauer on the malicious prosecution claim (ruling that Dr. Merchant's evidence of malice was insufficient as a matter of law), but denied Bauer's motion as to the § 1983 claim. After spelling out the material facts of the case, the Opinion explained that "[n]o prudent person in Officer Bauer's position could conclude, even on the basis of a reasonable mistake in interpreting or applying the law, that probable cause existed to arrest Dr. Merchant for violating § 18.2-174 [the Impersonation Statute] under the specific constellation of facts in this record." 778 F. Supp. 2d at 649. The Opinion recognized, however, Bauer's entitlement to reassert his qualified immunity defense at trial, acknowledging that a reasonable jury might accept his characterization of what he was told about the badge authorization by McCotter-Jacobs. *Id.* at 649 n.14; *see supra* note 3.

Bauer has filed a timely notice of appeal from the Opinion's denial of qualified immunity on the § 1983 claim. We

possess jurisdiction under the collateral order doctrine and 28 U.S.C. § 1291.

## II.

Although we do not ordinarily review the interlocutory rulings of the district courts, the Supreme Court has recognized that a denial of summary judgment based on qualified immunity is "an appealable 'final decision'" under the collateral order doctrine. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). We review de novo a district court's denial of qualified immunity. *See Melgar ex rel. Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010). Pursuant to *Saucier v. Katz*, 533 U.S. 194 (2001), we must determine "whether a constitutional violation occurred and . . . whether the right violated was clearly established," *Greene*, 593 F.3d at 353, but we may assess those issues in either sequence. In order for a plaintiff's claim to withstand the qualified immunity defense, both of the *Saucier* inquiries must be answered in the plaintiff's favor.

## III.

Officer Bauer contends that he is qualifiedly immune from liability to Dr. Merchant on her § 1983 claim "because an objectively reasonable police officer, relying upon common sense, inference, and deduction, could have believed that probable cause existed to arrest Merchant in light of clearly established law at the time of this arrest and the facts known to Bauer." Br. of Appellant 10-11. The doctrine of qualified immunity protects police officers and public officials from claims of constitutional violations "for reasonable mistakes as to the legality of their actions." *See Saucier v. Katz*, 533 U.S. 194, 206 (2001). The proper qualified immunity analysis is parsed into two inquiries, which, as mentioned above, may be assessed in either sequence. The first inquiry is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. The constitutional right to be free

from unreasonable searches and seizures is well settled. *See Miller v. Prince George's Cnty.*, 475 F.3d 621, 627 (4th Cir. 2007) ("Unquestionably, [t]he Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." (internal quotation marks omitted)). If we answer the first inquiry in favor of the plaintiff, we must consider whether the constitutional right violated "was clearly established in the specific context of the case — that is, [whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted." *Figg v. Schroeder*, 312 F.3d 625, 635 (4th Cir. 2002) (internal quotation marks omitted).

Bauer contends that an objectively reasonable officer could have believed that probable cause existed to arrest Dr. Merchant, and he maintains that the procedural steps that he took further justified his decision to seek an arrest warrant. To support the former contention, Bauer relies on the Virginia Court of Appeals decision in *English v. Commonwealth*, which upheld an Impersonation Statute conviction. With respect to the latter contention, Bauer asserts that *Torchinsky v. Siwinski*, 942 F.2d 257 (4th Cir. 1991), and *Wadkins v. Arnold*, 214 F.3d 535 (4th Cir. 2000), stand for the proposition that his discussion with the prosecutor, coupled with the magistrate judge's determination of probable cause, overcame any constitutional deficiencies in Dr. Merchant's arrest.

## A.

Dr. Merchant maintains that, although she was arrested on the basis of a warrant, it was not supported by probable cause and was therefore unreasonable. The issue of whether Merchant's arrest in Virginia for impersonating a police officer was reasonable or supported by probable cause is evaluated under an objective standard, based on what a prudent officer would have believed under the circumstances. *See Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982) ("The public interest in

deterrence of unlawful conduct and in compensation of victims remains protected by a test that focuses on the objective legal reasonableness of an official's acts."); *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (recognizing that probable cause for arrest exists if facts known to officer would warrant belief of prudent person that arrestee had committed crime); *Wilson v. Kittoe*, 337 F.3d 392, 398 (4th Cir. 2003) (observing that arrest is reasonable only if based on probable cause).

Even at the outer reaches of the Impersonation Statute, there was a lack of probable cause to arrest Dr. Merchant for falsely assuming the privileges of or pretending to be a police officer. She accurately related to Bauer that she was a Deputy Director of the Prince George's County Department of Corrections and that she worked in public safety. And, although Merchant referred to her county-issued vehicle as a "police car," she did so by using air quotes, which, as aptly explained by the district court, suggested that the term "police car" was "not actually appropriate or accurate for the . . . situation." *Merchant*, 778 F. Supp. 2d at 640 n.6.[4] Merchant carried a lawfully-issued badge, and she did not overtly display the badge to Bauer during the 7-Eleven encounter. Finally, Merchant declared that Bauer should have shown her some "professional courtesy," given her position with the Department of Corrections. Viewed from a neutral, detached perspective, Dr. Merchant's conduct during the 7-Eleven encounter does not suggest that she was "falsely assum[ing]" the powers of a police officer or "pretend[ing] to be any such officer." Va. Code § 18.2-174.

---

[4]The Opinion further observed that "the fact . . . that Dr. Merchant made quotation marks with her fingers when stating 'police car' supports Dr. Merchant's contention that she was merely indicating a *resemblance* between her car and a police car. Indeed, if Dr. Merchant had a genuine police car in her driveway, there would be no reason for her to frame her reference to 'police car' with gestured quotation marks." *Merchant*, 778 F. Supp. 2d at 645.

The relevant facts are not, however, confined to the encounter at the 7-Eleven. After the encounter, Bauer ascertained from McCotter-Jacobs that Merchant was employed by the Department and that certain of its non-law-enforcement officers carried badges. *See supra* note 3 and accompanying text. This information served to corroborate Dr. Merchant's representations to Officer Bauer at the 7-Eleven, rather than bolster a claim that she had falsely assumed the powers of a police officer or pretended to be one. Nevertheless, Bauer pursued a prosecution against Dr. Merchant for violating the Impersonation Statute. In the circumstances, we agree with the Opinion that, "a prudent person armed with this information would not conclude, as Officer Bauer did, that Dr. Merchant's badge, which he never was shown nor asked to see, was evidence that she was impersonating a law enforcement officer." *Merchant*, 778 F. Supp. 2d 646.

Notably, Bauer acknowledged that he made the probable cause assessment based in part on *English v. Commonwealth*, which upheld the Impersonation Statute conviction of a bounty hunter who had actually pulled over a motorist and displayed a badge falsely indicating that he was part of a "special investigations unit." *English*, 598 S.E.2d at 324. The acts undertaken by the bounty hunter in *English*, however, were far more brazen and egregious than those of Dr. Merchant. Further, as the Opinion explained, "the misled party in *English* was a civilian driver, not, as here, an experienced police officer. When considering whether Dr. Merchant intentionally impersonated a police officer, a prudent person would take into account the fact that Dr. Merchant was speaking to a police officer." *Merchant*, 778 F. Supp. 2d at 646. We agree with those observations of the district court.

To his credit, Officer Bauer sought to corroborate his probable cause analysis by seeking advice from a deputy Commonwealth's Attorney and relying on the magistrate's evaluation of his warrant application. In *Torchinsky v. Siwinski*, we deemed it significant that the arresting officer had

solicited an experienced supervisor's opinion that there was probable cause to arrest the plaintiffs, and that a magistrate had issued arrest warrants. There, Deputy Siwinski was assigned to investigate a brutal assault. The victim, still hospitalized at the time of the investigation, identified Bill and Sylvia Torchinsky as the attackers. Siwinski conferred with his sergeant, who believed there was probable cause to arrest the Torchinskys. Siwinski then presented his evidence to a magistrate judge, who determined that probable cause existed and issued the arrest warrants. After the Torchinskys were arrested, the victim recanted his earlier identification, and the charges were dismissed. The Torchinskys thereafter brought suit against Siwinski, who raised a qualified immunity defense. We lauded Siwinski for relying on his sergeant's legal analysis and making the effort to get a second opinion: "[The officer's] conduct . . . did not reflect impulsive or reckless behavior. . . . A reasonable officer . . . could view these consultations . . . as additional confirmation that probable cause was present." *Torchinsky*, 942 F.2d at 263. And, we observed that "[w]hen a police officer protects a suspect's rights by obtaining a warrant from a neutral magistrate, the officer should, in turn, receive some protection from suit under 42 U.S.C. § 1983." *Id.* at 262.

Nevertheless, *Torchinsky* is distinguishable because it involved a mistake of fact, i.e., an assault victim's misidentification of his attackers, rather than (as here) a mistake of law. Although there may have been reason to doubt the validity of the victim's account, in that he had changed his initial story and was undergoing hospital treatment, the victim's statement was unequivocal and his lucidity was confirmed by the hospital staff. Consequently, it was arguable that probable cause actually existed in *Torchinsky*, and, in fact, the district court so concluded. *See id.* at 261 ("The federal district court reviewed the evidence and determined that summary judgment should be granted because [the defendant detective] had indeed established probable cause."); *see also McKinney v. Richland Cnty. Sheriff's Dep't*, 431 F.3d 415, 418 (4th Cir.

2005) (concluding that probable cause justified issuance of arrest warrant based on victim's allegations supported by physical evidence). Here, by contrast, Officer Bauer's legal conclusion of probable cause was patently deficient.

Relying on *Wadkins*, Bauer asserts that the district court erred by giving insufficient consideration to the procedural steps that he undertook before seeking an arrest warrant. In *Wadkins*, the defendant detective had pursued a forgery investigation against the plaintiff, and, after receiving authorization from the Commonwealth's Attorney for Washington County, initiated criminal charges. *Wadkins*, 214 F.3d at 537. When the charges turned out to be meritless and the Commonwealth's Attorney later decided not to prosecute, Wadkins filed a civil lawsuit against the detective. *Id.* at 537-38. In according the detective qualified immunity, we relied on his conference with the Commonwealth's Attorney and the magistrate judge's subsequent issuance of the warrant, observing that those steps "weigh[ed] heavily *toward* a finding that Detective Arnold is immune." *Id.* at 541.

We recognized in *Wadkins*, however, that the prosecutor's approval of the criminal charge did not mandate a grant of qualified immunity. Rather, such evidence need only "appropriately be taken into account in assessing the reasonableness of [the detective's] actions." *Id.* at 542. We do not discount that Officer Bauer sought assurances from the prosecutor prior to seeking an arrest warrant for Dr. Merchant. We do, however, agree with the district court's view of the matter: Bauer's conversation with the state's lawyer does not — as a matter of law — overcome the unreasonableness of the criminal charge and its lack of probable cause.[5]

---

[5]The Opinion emphasized the lack of evidence in the summary judgment record concerning what Bauer had presented to the magistrate, or what he had related to the deputy Commonwealth's Attorney. Indeed, the record discloses no evidence concerning what Bauer actually presented to the magistrate to obtain the arrest warrant — or what he said to the prosecutor — other than his own conclusory declaration, which stated:

A key distinction between *Wadkins* and this case is that the defendant in *Wadkins* did not have access to exculpatory evidence (because he had reasonably opted not to pursue it), and, as a result, his actions, taken as a whole, were not rendered unreasonable. Conversely, Bauer actually discovered information tending to exonerate Dr. Merchant but nevertheless pursued the charge against her. Moreover, that a magistrate issued an arrest warrant at Bauer's request is not determinative "where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Torchinsky*, 942 F.2d at 261 (quoting *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986)). Although Bauer's warrant application is not in the record, we assume, consistent with the constraints of summary judgment review, that it contained only the undisputed facts, which fail to show probable cause.

Considering the totality of the circumstances, we conclude that no prudent person would have believed that Dr. Merchant violated the Impersonation Statute. It follows, then, that her arrest lacked probable cause and was unreasonable. Thus, Merchant's constitutional right not to be unreasonably seized

---

I met with Deputy Commonwealth's Attorney Ian Rodway to review my case relating to Dr. Merchant. I brought my investigative file to this meeting to assist me. After I reviewed my entire case relating to Dr. Merchant, I asked Mr. Rodway whether he agreed that I should seek a warrant for impersonating a law enforcement officer. Mr. Rodway told me that I had a good case.

. . .

I later provided testimony under oath about my case against Dr. Merchant to Magistrate Claude Beheler. I used my investigation file to assist me. After I had given my sworn testimony, Magistrate Beheler found probable cause and issued a warrant for the arrest of Dr. Merchant on the charge of violating Virginia Code § 18.2-174.

J.A. 109-10.

was violated, and we must resolve the first *Saucier* inquiry in favor of Dr. Merchant.[6]

## B.

Having ascertained that Officer Bauer violated Dr. Merchant's Fourth Amendment right, we turn to whether that constitutional right was clearly established. "This inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition[.]" *Saucier*, 533 U.S. at 201. The right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

Although it was clearly established that Dr. Merchant had a Fourth Amendment right not to be arrested without probable cause, we assess the right in a more particularized sense in the context of the specific facts of this case. *See Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996) ("Although the right to be free from seizures not founded upon probable cause was well established[,] . . . defining the applicable right at that level of generality is not proper[.]"). For a right to be clearly established, it is not necessary for the "exact conduct at issue" to have been previously held unlawful. *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998). Rather, "the existing authority must be such that the unlawfulness of the conduct is manifest." *Id.*

It is safe to say that at the time of Dr. Merchant's arrest, it was clear that police officers were not at liberty to arrest citizens for impersonating a police officer without any support or

---

[6]In ruling as we do today, we observe that the qualified immunity issue is not finally resolved against Bauer. As the district court explained in the Opinion, Bauer is entitled to reassert the defense at trial, pursuant to which the jury could resolve the disputed facts in his favor, such that qualified immunity applies. *See Merchant*, 778 F. Supp. 2d at 649 n.14; *supra* note 3.

probable cause. The Supreme Court has emphasized that "[w]here the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). No reasonable police officer in Bauer's position could have believed that the Fourth Amendment permitted an arrest when no aspect of the Impersonation Statute had been established. *See Mahoney v. Kesery*, 976 F.2d 1054, 1058 (7th Cir. 1992) (observing that "if a *reasonable* officer would not have believed the person had committed a crime, then the officer, whatever he did or did not believe, is acting contrary to clearly established law and therefore has no immunity").

Although convictions of Impersonation Statute violations are few in Virginia, *English v. Commonwealth* is a clear example of one such conviction, and Officer Bauer admittedly studied that case. In *English*, the defendant used the lights on his vehicle to initiate a traffic stop, displayed a badge around his neck, announced himself as a special agent to civilians and demanded identification from them. It is not necessary to compare *English* to this case in order to deny Bauer qualified immunity, but we would be remiss to ignore the fact that Bauer, equipped with this precedent, arrested Dr. Merchant for conduct well beyond the established paradigm of an Impersonation Statute violation.

Accordingly, the second step in our qualified immunity analysis — whether the Fourth Amendment right was clearly established — must also be resolved in favor of Merchant. As a result, the district court did not err in ruling that Officer Bauer is not, at this stage of the litigation, entitled to qualified immunity on Merchant's § 1983 claim.[7]

---

[7]On February 22, 2012, the Supreme Court decided *Messerschmidt v. Millender*, 132 S. Ct. 1235 (2012), another case in which a police officer sought qualified immunity from § 1983 liability. In *Messerschmidt*, the detective investigating an assault submitted warrant applications to his supervisors and a prosecutor for review before a magistrate issued the

## IV.

Pursuant to the foregoing, we affirm the district court's denial of summary judgment on Bauer's qualified immunity defense.

*AFFIRMED*

---

warrants. *Id.* at 1242-43. Although the Court acknowledged that a magistrate's signature on a warrant is a clear indication of objective reasonableness, it nonetheless emphasized that a lawsuit can proceed when "'it is obvious that no reasonably competent officer would have concluded that a warrant should issue.'" *Id.* at 1245 (citing *Malley*, 475 U.S. at 341). *Messerschmidt*, therefore, does not control our decision today.