**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 15-2200**

───────────

GREGORY ROBINSON,

    Plaintiff - Appellee,

  v.

THE CITY OF SOUTH CHARLESTON; S.W. MILLER, a/k/a Steven W. Miller; E.M. PETERSON, a/k/a Eric M. Peterson; E.R. MOYER, a/k/a Engracio R. Moyer,

    Defendants - Appellants.

───────────

Appeal from the United States District Court for the Southern District of West Virginia at Charleston. Thomas E. Johnston, District Judge. (2:14-cv-00330)

───────────

Argued: September 21, 2016    Decided: October 24, 2016

───────────

Before GREGORY, Chief Judge, and NIEMEYER and HARRIS, Circuit Judges.

───────────

Vacated in part and remanded by unpublished opinion. Judge Harris wrote the opinion, in which Chief Judge Gregory and Judge Niemeyer joined.

───────────

**ARGUED**: Molly Underwood Poe, PULLIN, FOWLER, FLANAGAN, BROWN & POE, PLLC, Charleston, West Virginia, for Appellants. Alexander Deane McLaughlin, THE CALWELL PRACTICE, LC, Charleston, West Virginia, for Appellee. **ON BRIEF:** Benjamin Dean Adams, THE CALWELL PRACTICE, LC, Charleston, West Virginia, for Appellee.

───────────

PAMELA HARRIS, Circuit Judge:

Plaintiff Gregory Robinson alleges that police officers in South Charleston, West Virginia, violated his Fourth Amendment rights by twice arresting him without probable cause. Because the district court incorrectly applied a subjective standard to the probable cause question, we vacate and remand for the requisite objective analysis of probable cause.

I.

A.

This case began with a report of employee theft at a Walmart in South Charleston, West Virginia, in July of 2012. Officer Steven Miller of the South Charleston police department responded, and met with Paul Higginbotham, Walmart's Asset Protection Manager. Higginbotham informed Miller that store surveillance video had captured three employees, or "associates," stealing Apple iPods. The first video, from July 6, 2012, included images of two Walmart associates, Jeremy Hartwell and Jirald Davis, and showed Hartwell removing iPods from a display case. In the second, filmed on July 10, a third associate – Robinson – also is on the scene, and Hartwell again is seen taking iPods from the case.

2

Miller sought an arrest warrant for Robinson on July 19, 2012, and submitted an affidavit setting out the facts in support of probable cause (the "First Affidavit"). According to Miller's affidavit, the July 10 surveillance video showed Robinson and Hartwell walking toward the display case, followed by Davis, who "begins to talk to [Robinson]." J.A. 1055. While Hartwell "select[s] merchandise" from the display case and conceals it in his pocket, "Davis continues to observe [Hartwell] and distract the other associate" – presumably, Robinson – "from noticing the activity." Id.

A Kanawha County magistrate judge subsequently issued an arrest warrant for Robinson. Robinson, who was on vacation at the time, voluntarily turned himself in to the police on July 30, 2012. The charges against Robinson were dismissed without prejudice, following a preliminary hearing at which neither Miller nor witnesses from Walmart appeared.

Walmart's Higginbotham urged the police to resolve the case against Robinson, and on November 20, 2012, the police again sought an arrest warrant. Officers Eric Peterson and Engracio Moyer filed the second application, accompanied by a slightly amended affidavit (the "Second Affidavit"). In this version, video of the July 10 episode shows Hartwell entering the scene with Robinson "present," while Davis speaks with Robinson and "appears to distract the other associates" – presumably,

3

associates other than Robinson – "from noticing the activity." J.A. 1059 (emphasis added).

A magistrate judge again issued an arrest warrant, and Robinson once again turned himself in on the warrant. This time, the relevant police officers – Peterson and Moyer – were present at the hearing. But they were never called to testify, and at the conclusion of the hearing, the magistrate judge dismissed the charges against Robinson, without prejudice, for lack of probable cause.

B.

In December 2013, Robinson brought a § 1983 action against Officers Miller, Peterson and Moyer (the "individual defendants"), alleging two Fourth Amendment violations: first, that the officers had sought arrest warrants based on affidavits that failed to establish probable cause; and second, that the officers had arrested Robinson without probable cause. Robinson also sued the City of South Charleston, claiming that the City was liable under § 1983 for its failure to train its police officers with respect to probable cause. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978). Finally, Robinson raised state-law malicious prosecution claims against each of the individual defendants.

The defendants moved for summary judgment on all of Robinson's claims. With respect to Robinson's Fourth Amendment

4

claims under § 1983 – central to this appeal – the individual defendants argued, in part, that they were entitled to qualified immunity. Robinson opposed the defendants' motion and sought summary judgment on his Fourth Amendment deficient-affidavit claims against the individual defendants.

The district court granted Robinson's motion as to Officer Miller and denied summary judgment to the defendants. The First Affidavit, the district court held, was a "textbook example of an affidavit that utterly fails to provide a probable cause basis" for an arrest warrant. J.A. 1075. The affidavit did no more than put Robinson in the vicinity of illegal activity at his own workplace, and actually provided the "exculpatory statement" that another employee "distract[ed]" Robinson during the theft. J.A. 1076. Because Officer Miller's decision to seek a warrant based on this "patently insufficient" affidavit, id., was objectively unreasonable, the district court concluded, Miller was not protected by qualified immunity.

The Second Affidavit, filed by Officers Peterson and Moyer, fared little better. Though it no longer contained "exculpatory language," J.A. 1079, it continued to rest entirely on Robinson's presence at the scene, without including any information suggesting actual involvement in criminal activity. But despite finding that the Second Affidavit failed to establish probable cause, the district court denied summary

5

judgment to Robinson on this claim.  Because Peterson and Moyer consulted with a prosecutor before seeking the arrest warrant, the district court held, they might be entitled to qualified immunity – a question that could not be resolved on summary judgment because of factual disputes regarding the nature of that consultation.

The district court turned next to Robinson's allegation that he was arrested without probable cause, treating it as a separate Fourth Amendment claim analogous to the common-law tort of malicious prosecution.  The critical question, the court held, was whether the information known to the officers at the time of Robinson's arrests amounted to probable cause of criminal activity.  And on that question, too, the district court found "pervasive discrepancies" in the record, J.A. 1102, precluding an award of summary judgment to the individual defendants on their qualified immunity defense.  Among those issues of material fact, the court held, was whether the officers had "interpreted" the Walmart surveillance video as showing evidence of Robinson's involvement in criminal activity. J.A. 1104.

Finally, the district court denied the defendants' motion for summary judgment on Robinson's § 1983 Monell claim against the City and on his state-law claims against the individual defendants.  Defendants timely noted this appeal.

6

II.

A.

Under 28 U.S.C. § 1291, we have jurisdiction to review "final decisions" of the district courts. As a general rule, a decision like the one below – granting the plaintiff partial summary judgment and denying summary judgment to the defendants – would not qualify as a final decision because it does not "end[] the litigation on the merits," resolving all of the parties' claims and leaving "nothing for the court to do but execute the judgment." Porter v. Zook, 803 F.3d 694, 696 (4th Cir. 2015) (citation and internal quotation marks omitted); see Bellotte v. Edwards, 629 F.3d 415, 426 (4th Cir. 2011) (holding partial grant of summary judgment is not "final decision" for purposes of 28 U.S.C. § 1291).

But "notwithstanding the absence of a final judgment," we do have jurisdiction to review "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law." Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); Henry v. Purnell, 501 F.3d 374, 376 (4th Cir. 2007). Our review is limited to questions of law; in this posture, we may not review a district court determination that "the pretrial record sets forth a 'genuine' issue of fact for trial." Gould v.

7

Davis, 165 F.3d 265, 268 (4th Cir. 1998) (citation and internal quotation marks omitted).

We review de novo the district court's denial of summary judgment and qualified immunity. Am. Civil Liberties Union of Maryland, Inc. v. Wicomico Cty., Md., 999 F.2d 780, 784 (4th Cir. 1993).

B.

We begin – and end, as explained below – with Robinson's claim that he was arrested without probable cause, and the district court's decision to deny the individual defendants summary judgment on their qualified immunity defense. The defendants argue that the court committed a legal error in denying qualified immunity, applying a subjective rather than objective standard to the question of probable cause. We agree.

"The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 183 (4th Cir. 1996). Whether there is probable cause to justify an arrest turns on the "facts and circumstances" known to the officer at the time of the arrest, Michigan v. DeFillippo, 443 U.S. 31, 37 (1979), and whether those known facts give rise to a "fair probability" that the suspect has committed a crime, Florida v. Harris, 133 S. Ct. 1050, 1055 (2013) (defining probable cause).

8

Critically, probable cause is measured objectively, not subjectively. United States v. Gray, 137 F.3d 765, 769 (4th Cir. 1998) (defining probable cause as "objective standard of probability that reasonable and prudent persons apply in everyday life"). While we "examine the facts within the knowledge of arresting officers to determine whether they provide a probability on which reasonable and prudent persons would act[,] we do not examine the subjective beliefs of the arresting officers to determine whether they thought that the facts constituted probable cause." Id. (emphasis in original).

The district court appears to have done just that, taking a distinctly subjective approach to the probable cause determination. All of the individual defendants pointed to the images captured on the Walmart surveillance video as a critical factor giving rise to probable cause that Robinson had engaged in criminal activity. But the district court did not watch the video, though it was made a part of the record, and so the court could not determine for itself whether the video contributed to probable cause as an objective matter. Instead, the district court considered whether the officers "interpreted" the video as suggestive of Robinson's involvement in the theft. J.A. 1104; see id. at 1099, 1109 n.13. And it was on this point – whether the officers themselves believed that the video indicated Robinson's complicity – that the district court identified a

9

factual dispute precluding the award of summary judgment, reasoning that the descriptions of the video provided in the First and Second Affidavits suggested that the officers did not interpret the video in a way that incriminated Robinson.

Under the correct Fourth Amendment standard, how the individual defendants subjectively interpreted the surveillance video is not a "material fact." Cf. Bostic v. Schaefer, 760 F.3d 352, 370 (4th Cir. 2014) ("Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'") (quoting Fed. R. Civ. P. 56(a)). The only relevant question is whether "reasonable and prudent persons," viewing the video along with any other evidence within the knowledge of the officers at the time of Robinson's arrest, would be warranted in believing to a fair probability that Robinson had engaged in criminal activity. Gray, 137 F.3d at 769. And if the question is sufficiently close that an objectively reasonable officer could conclude that probable cause existed, then the individual defendants are entitled to qualified immunity. See, e.g., Rogers v. Pendleton, 249 F.3d 279, 290 (4th Cir. 2001).

Accordingly, we cannot affirm the district court's denial of qualified immunity to the officers on Robinson's claim that he was arrested without probable cause. Instead, we vacate that

ruling and remand to the district court so that it may undertake the requisite objective inquiry into probable cause.

We recognize that a district court finding that Robinson's arrest was supported by probable cause might affect Robinson's other claims, as well. For instance, probable cause is sufficient to justify a public arrest under the Fourth Amendment, regardless of the validity of the arrest warrants obtained by the officers or any deficiencies in the affidavits supporting them. See Graves v. Mahoning Cty., 821 F.3d 772, 774-76 (6th Cir. 2016). And whether the officers in fact arrested Robinson without probable cause also may be relevant to Robinson's failure-to-train claim against the City and to his state-law malicious prosecution claims. We express no view on those issues, and leave it to the district court to consider in the first instance what effect, if any, its disposition of Robinson's claim that he was arrested without probable cause has on the remainder of this case.

VACATED IN PART AND REMANDED