**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-1954

GREGORY ROBINSON,

Plaintiff - Appellee,

v.

S.W. MILLER, a/k/a Steven W. Miller; E.M. PETERSON, a/k/a Eric M. Peterson;
E.R. MOYER, a/k/a Engracio R. Moyer; THE CITY OF SOUTH CHARLESTON,

Defendants - Appellants.

Appeal from the United States District Court for the Southern District of West Virginia, at
Charleston. Thomas E. Johnston, Chief Judge. (2:14-cv-00330)

Argued: December 10, 2019                    Decided: February 6, 2020

Before GREGORY, Chief Judge, and NIEMEYER and HARRIS, Circuit Judges.

Affirmed in part and dismissed in part by unpublished opinion. Judge Harris wrote the
opinion, in which Chief Judge Gregory and Judge Niemeyer joined.

**ARGUED:** Drannon L. Adkins, PULLIN, FOWLER, FLANAGAN & POE, PLLC,
Charleston, West Virginia, for Appellants. Alexander D. McLaughlin, THE CALWELL
PRACTICE, LC, Charleston, West Virginia, for Appellee. **ON BRIEF:** Molly Underwood
Poe, PULLIN, FOWLER, FLANAGAN & POE, PLLC, Charleston, West Virginia, for
Appellants. Benjamin D. Adams, THE CALWELL PRACTICE, LC, Charleston, West
Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

In July of 2012, a report of employee thefts of iPods at a Walmart in South Charleston, West Virginia, set off the nearly-eight-year-long chain of events that led to this appeal. Those events include two separate arrests of Gregory Robinson, with charges dismissed both times; Robinson's civil suit against the arresting officers and the city, claiming in part that he was arrested without probable cause; a district court decision denying the defendants' motion for summary judgment, concluding that disputed facts precluded an award of qualified immunity to the arresting officers; an appeal of that decision, in which we vacated in part and remanded to the district court; and finally, a second district court decision – the one now on appeal – again denying the arresting officers summary judgment on qualified immunity grounds.

Despite this protracted history, the issue at the heart of this appeal is straightforward. Robinson claims that he was arrested twice without probable cause, and the officers who arrested him claim that they are entitled to qualified immunity as a matter of law. On remand, as in its initial opinion, the district court ruled against the officers, determining that genuine disputes of fact about what evidence the officers knew of at the time of the arrests precluded summary judgment on qualified immunity grounds. Our task, in this posture, is a narrow one, "limited to [one] legal question: if we take the facts as the district court gives them to us, and we view those facts in the light most favorable to the plaintiff, is the defendant still entitled to qualified immunity?" *Williams v. Strickland*, 917 F.3d 763, 768 (4th Cir. 2019) (citation omitted). Mindful of this jurisdictional limitation, we affirm

3

the district court's denial of the officers' motion for summary judgment on Robinson's claims that he was arrested without probable cause.

The defendants also ask that we reverse the district court's denial of summary judgment as to certain additional claims: that the City violated § 1983 by failing to train its police officers with respect to probable cause, and that the individual officers violated state law in arresting Robinson without probable cause. Denials of summary judgment are interlocutory orders generally not subject to immediate appeal. And while the collateral order doctrine allows us to review the denial of summary judgment to the officers based on qualified immunity – subject to the strictures noted above – there is no independent ground for jurisdiction over the remaining claims. On interlocutory review, we decline to exercise pendent jurisdiction and therefore dismiss the appeal as to these other claims.

## I.

### A.

Because this is an interlocutory appeal of a denial of qualified immunity, we recount the facts as the district court viewed them – that is, in the light most favorable to the plaintiff, Gregory Robinson. *See Winfield v. Bass*, 106 F.3d 525, 529–30 (4th Cir. 1997) (en banc).

In 2012, Robinson was an employee in the electronics department of a Walmart store located in South Charleston, West Virginia. That July, Paul Higginbotham, the store's Asset Protection Manager, contacted the South Charleston Police Department to report an employee theft. Officer Steven Miller met with Higginbotham, who informed

4

Miller that two store surveillance videos had captured employees stealing Apple iPods. The first video, from July 6, shows Walmart associates Jeremy Hartwell and Jirald Davis in the electronics department, with Hartwell removing iPods from a display case. In the second, from July 10, a third Walmart associate – Robinson – stands at the electronics counter, while Davis is present and Hartwell again is seen taking iPods from the case.

On July 18, Officer Miller applied for a warrant to arrest Hartwell, and made the arrest that same day. At some point on or after this date, the police questioned Hartwell, and Hartwell produced a handwritten statement that implicated Robinson and Davis. The Hartwell Statement is not dated, and it is not clear when it was obtained.

On July 19, Miller applied for arrest warrants for both Robinson and Davis. In the affidavit accompanying the warrant application for Robinson, Miller provided what the district court termed an "exculpatory statement" regarding Robinson: According to Miller, the July 10 video showed Davis "distract[ing]" Robinson while Hartwell took merchandise from the display. *Robinson v. Miller*, No. 2:14-CV-00330, 2015 WL 5298965, at \*12 (S.D.W. Va. Sept. 10, 2015) ("First Opinion"); *see also Robinson v. Miller*, No. 2:14-CV-00330, 2018 WL 3614208, at \*2 (S.D.W. Va. July 27, 2018) ("Second Opinion"). Still, a magistrate judge issued an arrest warrant, and Robinson voluntarily turned himself in to the police. The charges were dismissed without prejudice following a preliminary hearing at which neither Miller nor any witness from Walmart appeared.

Several months passed, during which Officers Eric Peterson and Engracio Moyer – who worked regularly around the Walmart store – heard from Higginbotham that he had unsuccessfully tried to contact Officer Miller about resolving the case against Robinson.

5

Higginbotham asked Peterson and Moyer to "handle" the issue. Second Opinion, 2018 WL 3614208, at *3. After speaking to prosecutors, Peterson and Moyer sought a second arrest warrant on November 20, 2012, based on the same July 10 incident. This time, the affidavit in support of probable cause was amended to remove the exculpatory reference to Robinson. In this version, video of the July 10 episode shows Hartwell entering the scene while Davis speaks with Robinson and "appears to distract the other associates" – presumably, associates other than Robinson – "from noticing the activity." *Id.* at *4.

Again, a magistrate judge issued an arrest warrant, and Robinson turned himself in. At the second probable cause hearing, Higginbotham testified and recounted the contents of the videos. Officers Peterson and Moyer were present, though they were not called to testify, and the state neither introduced nor mentioned the Hartwell Statement. At the conclusion of the hearing, the magistrate judge dismissed the charges against Robinson for lack of probable cause.

**B.**

In December of 2013, Robinson filed suit against Officers Miller, Peterson, and Moyer in their individual capacities and against the City of South Charleston, alleging the following claims: that the officers violated § 1983, both by seeking arrest warrants based on affidavits that failed to establish probable cause and by arresting Robinson without probable cause (Counts I and II); that the City violated § 1983 by failing to train its police officers with respect to probable cause (Count III); and that the officers also violated state law in arresting Robinson without probable cause (Counts IV and V).

6

The defendants moved for summary judgment on all of Robinson's claims. Robinson sought summary judgment on his deficient affidavit claims against the individual defendants, contending that the affidavits submitted in support of the arrest warrants against him failed to establish probable cause as a matter of law. The district court granted Robinson's motion on the deficient affidavit claim against Miller, denied Robinson's motion on the deficient affidavit claim against Peterson and Moyer, and denied the defendants' motion in its entirety.

Central to this appeal is the officers' claim, in their motion for summary judgment, that they are entitled as a matter of law to qualified immunity on Robinson's allegation that he was arrested without probable cause and in violation of the Fourth Amendment. On that issue, the district court explained, the critical question is whether the information known to the officers at the time of Robinson's arrests amounted to probable cause of criminal activity. *See* First Opinion, 2015 WL 5298965, at *22 (citing *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996)). And on that question, the district court determined, there were "pervasive discrepancies in the record," creating genuine issues of fact as to what the officers knew when they arrested Robinson and precluding summary judgment. *Id.* at *25. In particular, the district court found, the "record is entirely unclear" as to whether Officer Miller, *id.* at *24, or Officers Peterson and Moyer, *see id.* at *26, had knowledge, at the time of the relevant arrests, of Hartwell's statement implicating Robinson in the thefts. The district court also identified a material dispute of fact as to whether the officers "interpret[ed]" the surveillance videos as evidence that Robinson was acting in concert with his Walmart colleagues. *Id.* at *23; *see id.* at *28, *28 n.13.

7

**C.**

The defendants appealed. We may review on appeal a district court's denial of qualified immunity "to the extent that it turns on an issue of law." *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Exercising that limited jurisdiction, we held that the district court committed a legal error in its analysis of probable cause, incorrectly applying a subjective rather than an objective standard. *See Robinson v. City of S. Charleston*, 662 F. App'x 216, 220 (4th Cir. 2016) ("*Robinson I*").

More specifically, we explained, the district court "considered whether the officers 'interpreted' the video as suggestive of Robinson's involvement in the theft," rather than watching the surveillance video for itself to determine whether it contributed to probable cause as an objective matter. *Id.* (emphasis omitted). But whether the officers *interpreted* the video as incriminating Robinson was not a material factual dispute, because the individual officers' subjective interpretations were irrelevant to the probable cause analysis. The only question actually material to the existence of probable cause, we concluded, was an objective one: whether "'reasonable and prudent persons,' viewing the video along with any other evidence within the knowledge of the officers at the time of Robinson's arrest, would be warranted in believing to a fair probability that Robinson had engaged in criminal activity." *Id.* (quoting *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998)).

As a result, and without passing judgment on any other legal claim on appeal, we vacated the district court's ruling in part and remanded for the district court to undertake the requisite objective inquiry into probable cause. *See id.* at 221. We noted that if the

district court reached a different conclusion as to whether Robinson's arrests were supported by probable cause, that finding might affect Robinson's other claims. *See id.* But "we express[ed] no view on those issues, and [left] it to the district court to consider in the first instance what effect, if any, its disposition of Robinson's claim that he was arrested without probable cause has on the remainder of this case." *Id.*

**D.**

On remand, the district court again denied the officers' motion for summary judgment on Robinson's claims that he was arrested without probable cause. *See* Second Opinion, 2018 WL 3614208, at *12. This time, the district court "underscore[d] the objective standard that the Fourth Circuit emphasized," considering only the objective question of whether "reasonable and prudent persons," viewing evidence known to the officers at the time of the arrests, would find a "fair probability" of criminal activity. *Id.* at *9. Under that objective standard, the court concluded, the officers were not entitled to qualified immunity as a matter of law.

As to Count I – the arrest without probable cause claim against Officer Miller – the court itself reviewed the Walmart surveillance videos, which undisputedly were known to Miller at the time of Robinson's first arrest. But in the one video in which Robinson is present, the district court reasoned, Robinson "simply stood at the counter looking at a binder for the majority of the video. While he may have looked around at times and assisted a customer in the latter half of the video, these actions are not suspicious behavior for a sales associate." *Id.* at *10. A reasonable officer armed with the video evidence, the court

concluded, would have had – at most – reasonable suspicion to investigate Robinson further, not probable cause to arrest him.

With respect to the other evidence upon which Miller relied – principally, the Hartwell Statement – the district court recognized, as described above, that it already had found a genuine dispute of fact as to whether Miller knew of that evidence when Robinson was arrested. *See id.* at \*5 (describing the First Opinion). But even assuming that Miller *had* known of the Hartwell Statement at the time of the arrest, the district court reasoned, there still would be no probable cause, because the Statement was contradicted by other evidence available to Miller.

As to Count II – the arrest without probable cause claims against Officers Peterson and Moyer – the same basic analysis applied with respect to probable cause: The video itself was insufficient to establish probable cause, and "as noted in the [c]ourt's previous opinion, there are genuine issues of material fact as to [what] additional information" was possessed by the officers when they arrested Robinson. *Id.* at \*12. Moreover, though Peterson and Moyer's claim to qualified immunity was bolstered by the fact that they (unlike Miller) had consulted with a prosecutor before seeking an arrest warrant, "genuine issues of material fact surrounding the conversation . . . with the prosecutor" precluded the award of summary judgment on that ground. *Id.* at \*12 and n.10.

Given these genuine disputes of material fact, the district court held, the officers were not entitled to qualified immunity as a matter of law, and summary judgment was

10

denied.\* For essentially the same reasons it had given in its first opinion, the district court also denied, again, the defendants' motion for summary judgment on Robinson's § 1983 *Monell* claim and state-law claims.

This timely appeal followed.

## II.

Before proceeding to the merits, we must "first satisfy ourselves of our jurisdiction" over this appeal. *Cooper v. Sheehan*, 735 F.3d 153, 157 (4th Cir. 2013). The district court's second decision in this case, denying summary judgment to the defendants, ordinarily would not qualify as a "final decision" over which we have jurisdiction under 28 U.S.C. § 1291. *See Porter v. Zook*, 803 F.3d 694, 696 (4th Cir. 2015) (citation and internal quotation marks omitted); *Bellotte v. Edwards*, 629 F.3d 415, 426 (4th Cir. 2011).

---

\* We understand the district court to have denied summary judgment on this basis with respect to Officer Miller, *see* Second Opinion, 2018 WL 3614208, at \*11–\*12, as well as with respect to Officers Peterson and Moyer, *see id.* at \*12. As noted above, in analyzing Robinson's claim against Miller, the district court did assume for the sake of argument that Miller had access to the Hartwell Statement when he arrested Robinson, and still found an absence of probable cause. *Id.* at \*10. But at the same time, the district court specifically identified as a genuine dispute of fact the question of whether Miller actually *did* have access to the Hartwell Statement. *See* First Opinion, 2015 WL 5298965, at \*24 (discussing conflicting evidence); Second Opinion, 2018 WL 3614208, at \*5 (describing factual dispute identified in the First Opinion). A district court, of course, cannot resolve disputed issues of fact on a motion for summary judgment, and so we read the district court opinion as assuming only for the sake of argument that the Hartwell Statement was available to Miller when he arrested Robinson, and denying summary judgment in light of what it described as a "record [] riddled with inconsistencies and questions of fact as to what knowledge the Individual Defendants" – all three police officers, *see* First Opinion, 2015 WL 5298965, at \*1 – "possessed when they executed the respective arrests of [Robinson]." *Id.* at \*37.

11

But as we explained in our first encounter with this case, under the collateral order doctrine, this court *does* have jurisdiction "to review 'a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law.'" *See Robinson I*, 662 F. App'x at 219 (quoting *Mitchell*, 472 U.S. at 530).

In this interlocutory posture, though, our review is limited: We may address only purely legal questions, such as whether uncontroverted facts show that probable cause existed to make an arrest, *see Merchant v. Bauer*, 677 F.3d 656, 661 (4th Cir. 2012), or whether the federal right allegedly infringed was clearly established, *see Behrens v. Pelletier*, 516 U.S. 299, 313 (1996). What we may not do is review a district court's determination that "the pretrial record sets forth a 'genuine' issue of fact for trial." *Gould v. Davis*, 165 F.3d 265, 268 (4th Cir. 1998) (citation omitted).

That limit on our jurisdiction is critical here. On appeal, the officers' primary argument is that they are entitled to qualified immunity because an objectively reasonable officer, taking into account not only the surveillance video but also the Hartwell Statement, would have believed that there was probable cause to arrest Robinson. The officers acknowledge that the district court excluded the Hartwell Statement from its probable cause analysis. But, they insist, that was in error: Properly understood, the pretrial record does not give rise to a genuine factual dispute as to whether the officers had access to the Hartwell Statement before making their respective arrests, but instead makes clear that they did.

Whatever the merits of the officers' fact-based argument – and we appreciate that the record in this case is lengthy and complex – we lack the jurisdiction to address it in this

12

interlocutory posture. *See Gould*, 165 F.3d at 268. The district court, applying the correct summary judgment standard and properly viewing the record in the light most favorable to the plaintiff, *see* First Opinion, 2015 WL 5298965, at *6–*7; Second Opinion, 2018 WL 3614208, at *7, found that the pretrial evidence – including Officer Miller's own testimony – made it "entirely unclear" whether Miller had knowledge of the Hartwell Statement when he arrested Robinson, First Opinion, 2015 WL 5298965, at *24, and that the record was similarly unclear as to whether Officers Peterson and Moyer knew of the Statement prior to Robinson's second arrest, *see id.* at *26. "Whether we agree or disagree with the district court's assessment of the record evidence on that issue . . . is of no moment in the context of this interlocutory appeal," *Culosi v. Bullock*, 596 F.3d 195, 201 (4th Cir. 2010), in which our jurisdiction extends only to purely legal questions, *see Mitchell*, 472 U.S. at 530.

When it comes to Robinson's claims that he was arrested without probable cause, in other words, our jurisdiction is limited to one "narrow legal question": Taking the facts "as the district court gives them to us" and viewed in the light most favorable to Robinson as the plaintiff, are the officers entitled to qualified immunity? *See Williams*, 917 F.3d at 768. We turn now to that question, and then address whether our jurisdiction extends to the remaining issues raised by the defendants on appeal.

## III.

### A.

"We review de novo a district court's decision to deny a summary judgment motion asserting qualified immunity. Summary judgment is appropriate 'if the movant shows that

13

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015) (citation omitted) (quoting Fed. R. Civ. P. 56(a)). Where, as here, the district court articulates the facts as it viewed them in determining that summary judgment was inappropriate, our task is simple: We "must accept those facts and then determine whether, based on those facts, a reasonable person in the defendant's position could have believed that he or she was acting in conformity with the clearly established law at the time." *Gray Hopkins v. Prince George's Cty., Md.*, 309 F.3d 224, 229 (4th Cir. 2002).

There is no dispute in this case as to the underlying Fourth Amendment standard that governs Robinson's two arrests. "The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." *Brooks v. City of Winston–Salem, N.C.*, 85 F.3d 178, 183 (4th Cir. 1996). Whether Robinson was arrested without probable cause, as we explained in *Robinson I*, turns on an objective assessment of whether a reasonable officer, viewing the evidence within the knowledge of the defendant officers at the time of Robinson's arrests, would be warranted in believing to a fair probability that Robinson had engaged in criminal activity. *See* 662 F. App'x at 220. And even if the individual defendants lacked probable cause, they nonetheless would be entitled to qualified immunity "if a reasonable person in the official's position could have failed to appreciate" that probable cause did not exist. *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991) (quotation omitted).

Applying that well-established standard, the district court correctly determined that the individual defendants were not entitled to qualified immunity on the current record. It

14

is undisputed that Officers Miller, Peterson, and Moyer all had viewed the Walmart surveillance videos by the time of the relevant arrests. But the district court concluded that no "reasonable and prudent person" would believe that Robinson's "appearance in the second video *alone* provides a basis to believe that [Robinson] was engaging in criminal activity." Second Opinion, 2018 WL 3614208, at *10 (emphasis added). Like the defendants, who conceded the point at oral argument on appeal, we agree.

The video does show, as the district court acknowledged, Robinson at the scene and in close proximity to Hartwell while Hartwell takes iPods from the Walmart display case. "Presence at a crime scene or accompanying someone who engages in criminal activity," however, does not by itself establish probable cause of involvement in the criminal offense. *Id.* at *9 (citing *Taylor*, 81 F.3d at 434). It may well be, as the district court supposed, that Robinson's behavior as shown on the video – continuously and steadfastly "flipping through the pages of [a] binder" while Hartwell removes the iPods, *id.* at *9 – would meet the lower standard of reasonable suspicion, allowing for certain investigative steps short of arrest. *See id.* at *10. But standing alone, it does not give rise to an objectively reasonable belief in the probable cause required to justify an arrest.

Because of our limited jurisdiction on this interlocutory appeal, that essentially ends the matter. As noted above, the defendants do not dispute that the video alone is insufficient to establish their qualified immunity, and instead rely on the video in combination with other evidence, chiefly the Hartwell Statement. But as we have explained, we have no jurisdiction, in this interlocutory posture, to review the district court's determination that the pretrial record generates genuine disputes of fact as to

15

whether any of the officers had knowledge of the Hartwell Statement – or any other relevant evidence – before Robinson's arrests. Nor may we reevaluate the district court's conclusion that there are genuine questions of fact regarding the content of the conversation Officers Peterson and Moyer had with a prosecutor before arresting Robinson. Considering the facts as given to us by the district court, as we must do at this stage of the proceedings, *see Williams*, 917 F.3d at 768, we agree that the current record precludes an award of qualified immunity as a matter of law. We therefore affirm the district court's denial of summary judgment to the defendant officers on Robinson's claims that he was arrested without probable cause.

**B.**

The defendants also seek review of the district court's decision on two additional fronts, challenging the court's denial of their summary judgment motion with respect to Robinson's § 1983 failure-to-train claim against the City and Robinson's state-law claims against the individual officers. At this stage of the litigation, however, that challenge is premature: Denial of summary judgment on these issues is not a "final decision" for purposes of 28 U.S.C. § 1291, the defendants have not attempted to assert any distinct grounds for jurisdiction, and we decline to exercise pendent appellate jurisdiction here.

"It borders on the axiomatic that, subject to certain limited exceptions, our appellate jurisdiction is limited to final orders from the district courts." *Rux v. Republic of Sudan*, 461 F.3d 461, 474 (4th Cir. 2006) (citing 28 U.S.C. § 1291). Moreover, interlocutory review of the individual defendants' qualified immunity claims does not automatically or inevitably confer jurisdiction over other contested issues in the case. *See Swint v.*

16

*Chambers Cty. Comm'n*, 514 U.S. 35, 43–51 (1995). Far from it: Our authority to exercise pendent appellate jurisdiction in these circumstances is "an exception of limited and narrow application," available "only (1) when an issue is 'inextricably intertwined' with a question that is the proper subject of an immediate appeal; or (2) when review of a jurisdictionally insufficient issue is 'necessary to ensure meaningful review' of an immediately appealable issue." *Rux,* 461 F.3d at 475 (quoting *Swint*, 514 U.S. at 50–51). Here, our holding – that the record, as construed by the district court, does not allow for an award of qualified immunity as a matter of law – resolves neither the *Monell* claim against the City nor the state-law claims against the individual officers, and does not otherwise fall within the *Swint* exceptions. *See Evans v. Chalmers*, 703 F.3d 636, 654 n.11, 658 (4th Cir. 2012) (holding that a *Monell* claim may be "inextricably intertwined" under *Swint* with an interlocutory review of qualified immunity where "our determinations of the individual officers' qualified immunities fully resolve the issue of the City's *Monell* liability").

Perhaps recognizing the difficulty here, the defendants simply do not address this jurisdictional issue. They have not argued that jurisdiction is proper under *Swint*, nor have they directly requested that this court exercise pendent appellate jurisdiction over the *Monell* or state-law claims at issue. Even assuming we could take pendent appellate jurisdiction over either of those claims, moreover, "the decision to exercise such jurisdiction is purely discretionary," *Clem v. Corbeau*, 284 F.3d 543, 549 n.2 (4th Cir. 2002) (citing *DiMeglio v. Haines,* 45 F.3d 790, 808 (4th Cir. 1995)), and we would decline to exercise any such jurisdiction here. We therefore dismiss the defendants' appeal from the denial of summary judgment on Robinson's *Monell* and state-law claims.

17

**IV.**

For the foregoing reasons, we affirm the district court's denial of summary judgment to the defendants on Robinson's claims that he was arrested without probable cause, included in Counts I and II of the complaint, and dismiss the appeal from the denial of summary judgment on Robinson's *Monell* and state-law claims, contained in Counts III, IV, and V of the complaint.

*AFFIRMED IN PART AND DISMISSED IN PART*